NIEMEYER, Circuit Judge:
 

 After Erick Gibbs admitted to four violations of the conditions of his supervised release, the district court, upon giving its explanation for doing so, imposed the Guidelines-recommended sentence of 24-months' imprisonment. Gibbs contends that the sentence was plainly procedurally unreasonable because the district court did not adequately address his arguments in favor of a downward-variance sentence. We conclude, however, that the record amply demonstrates that the district court, in reaching its decision to impose the recommended sentence, considered Gibbs's arguments for a downward variance and addressed several of them, while highlighting the seriousness of the violations, as well as Gibbs's extensive criminal history. Accordingly, we affirm.
 

 I
 

 Gibbs pleaded guilty in August 2010 to possession of a firearm by a felon, in violation of
 
 18 U.S.C. § 922
 
 (g)(1), and thereafter he was sentenced to 36 months' imprisonment and 3 years' supervised release.
 

 Six months after Gibbs was released from prison, he was charged in state court for possession of drug paraphernalia and, upon conviction, was sentenced to 45 days' imprisonment, suspended, and 18 months' probation. Then, in February 2013 and again in August 2013, Gibbs tested positive for the use of marijuana. Finally, in February 2014, Gibbs participated in a conspiracy to traffic in heroin and maintained a vehicle, dwelling, or place for controlled substances and, upon conviction, was sentenced to 19 to 32 months' imprisonment. All four of these incidents violated the conditions of Gibbs's supervised release, and Gibbs's probation officer accordingly filed a motion for revocation. At the revocation hearing, Gibbs admitted to all four violations, and the court thus found "as a fact that the defendant violated the terms and conditions of his 2010 judgment." The
 court concluded further that Gibbs's drug trafficking offense was a Grade A violation, the most serious.
 
 See
 
 U.S.S.G. § 7B1.1(a).
 

 As provided by the policy statements in Chapter 7 of the Sentencing Guidelines, Gibbs's Grade A violation mandates revocation of supervised release,
 
 see
 
 U.S.S.G. §§ 7B1.1(a)(1), 7B1.3(a)(1), and when a Grade A violation is coupled with Gibbs's Criminal History Category VI, a sentence of 33 to 41 months' imprisonment is recommended,
 
 see id
 
 . § 7B1.4. But because the maximum revocation sentence that Gibbs could receive, given his underlying conviction, was 24 months' imprisonment,
 
 see
 

 18 U.S.C. § 3583
 
 (e)(3), that sentence became his recommended sentence, U.S.S.G. § 7B1.4(b)(1). Counsel for both parties recognized as much.
 

 While presenting no evidence at the hearing, Gibbs's counsel asked the court to impose a downward-variance sentence of 12 months' imprisonment based on three "mitigation factors." As she stated to the court, "There's extreme hardship on his family. There is the time already served [on the drug-trafficking conviction]. There may be, thirdly, some discussion from the Government."
 

 On the first factor, which was counsel's main argument, counsel stated that a 24-month prison term would deprive Gibbs's three children of significant income and a stable home environment and would impose hardship on Gibbs's mother, who had relocated to care for the children during his absence, as his wife was deceased. With respect to Gibbs's earning potential, counsel noted that Gibbs "went through a program called Youth Build, where he learned a significant amount of skills. He can build a house from the ground up, framing, painting, landscaping." She also pointed to Gibbs's employment, stating that Gibbs had been employed "at the House of Raeford, the chicken plant" and at "Peters Landscaping Company, in Wilmington. He worked seven days, from 10 to 3. So he has skills that he can build upon once he gets this behind him." Counsel also noted that Gibbs had been "working toward his GED."
 

 On the second mitigation factor, counsel noted that Gibbs had already served 14 months on his drug-trafficking conviction and therefore argued that he had already been duly punished.
 

 And on the third factor, she stated, "hopefully, the Government will discuss with this Court" Gibbs's assistance to law enforcement after his drug-trafficking conviction.
 

 Counsel then summarized Gibbs's justification for a downward variance:
 

 Now, I'm asking for 12 months ... [a]nd I do think that period of time will be enough time to not only punish Mr. Gibbs, but certainly deter him from any further conduct. But ... it is [also] a reasonable time to be away from the unique and extraordinary situation that he has with his family. So that when he returns home, he can immediately jump in with the skills that he has and be able to provide resources for them[.]
 

 In response, the government argued that Gibbs's Grade A violation was a "serious charge" and that otherwise he had an extensive criminal history:
 

 200 bags of heroin was the amount that was involved with the second conviction in 2014. And Mr. Gibbs has had several prior drug convictions and has had 12 convictions prior to his federal sentence. And it's over a six-year period. And several of those were assaultive in nature. He had two assaults. He had multiple resisting officers. So he has not had a good track record.
 

 The government noted further that one of the violations at issue-Gibbs's possession
 of drug paraphernalia-occurred within months after beginning his term of supervised release. But the government did acknowledge Gibbs's cooperation with law enforcement, explaining that "after the state [offense] with the 200 bags of heroin, [Gibbs] did meet with ATF and did assist them ... with regard to criminal activity in the Wilmington area." The government allowed that although the information Gibbs provided had not yet resulted in any charges, law enforcement officers believed that the information was "helpful" and "truthful."
 

 After the district court offered Gibbs the opportunity to speak on his own behalf, which he declined to do, the court imposed the Guidelines' recommended sentence of 24-months' imprisonment. In doing so, it explained:
 

 On March 1st, 2013, the defendant pled guilty to misdemeanor possession of drug paraphernalia in Brunswick County District Court and was sentenced to 45 days' imprisonment, suspended, 18 months of supervised probation. On January 19, 2015, the defendant was arrested and charged with felony conspiracy to traffic opium/heroin and felony maintain vehicle/dwelling/place for controlled substances. On September 17th, 2015, defendant pled guilty to conspiracy to sell heroin and maintain a vehicle/dwelling/place for controlled substances. The court imposed a 19 to 32 month term of imprisonment. On February 25th, 2013, and August 1st, 2013, the defendant tested positive for marijuana.
 

 The defendant has a history of gang affiliation and has prior convictions for assault, marijuana possession, resisting a public officer, possession of stolen goods, trespass, possession of cocaine, possession of a firearm by a felon, possession of a handgun by a minor, carrying a concealed weapon, and driving while license revoked.
 

 He has a scant employment record and little in the way of marketable job skills. While on supervision, the defendant did make an effort to obtain his GED. Upon consideration of Chapter 7 of the [Sentencing Guidelines Manual] and the relevant factors listed in
 
 18 U.S.C. § 3553
 
 (a), the defendant's term of supervision is revoked and the defendant is ordered to be committed to the custody of the [BOP] ... for a period of 24 months.
 

 When the court then asked defense counsel if she had anything further to add, she stated:
 

 Yes, Your Honor. I would ask you to reconsider the range of 24 months again-if nothing else, for the extreme hardship that it's going to be on his family at this point. They have done a significant amount to try to mitigate this themselves. But him being away for two years, Your Honor, that's [something] I believe ... the Court can consider. I do not-as the United States has said, they believe that he should have ... something coming off.
 

 In response, the court said, "All right." Then, after a "[b]rief pause in the proceeding" (as noted in the transcript), the court stated, "No change. Twenty-four months."
 

 From the district court's judgment entered January 12, 2017, Gibbs appealed.
 

 II
 

 Gibbs contends that his sentencing was plainly unreasonable as a procedural matter because the district court failed to address or addressed inadequately his arguments for a downward-variance sentence. In particular, his counsel argues:
 

 Perhaps most troubling, the district court, with no explanation whatsoever,
 found Mr. Gibbs had "little in the way of marketable job skills." This finding was strictly contrary to what defense counsel had asserted about her client and had offered as a mitigating factor, and yet the court did not explain why it believed Mr. Gibbs had little marketable job skills. Most of us cannot "build a house from the ground up."
 

 The government responds that the court gave numerous reasons for imposing its 24-month term of imprisonment and that revocation sentences are subject to extra-deferential review. It points out that Gibbs's violations of his supervised-release conditions were sufficiently severe "breaches of trust" to outweigh the reasons that he advanced in favor of a downward variance. And it argues that the district court gave Gibbs sufficient individualized consideration when imposing his revocation sentence, emphasizing that it is clear that the court considered his arguments for a downward variance, such that the court committed no procedural error in sentencing him, let alone any error that was plain.
 

 The question thus presented is whether the district court provided an adequate explanation when imposing Gibbs's 24-month revocation sentence, given Gibbs's arguments for a downward variance.
 

 At the outset, it is important to review what is demanded of district courts in imposing revocation sentences. When a defendant appears before a court for revocation of his supervised release, he is already subject to the sentence of his criminal judgment, about which he presumably received an appropriate explanation, including an explanation of the range of sentence that could be imposed and why he was receiving a particular sentence. He was also advised of his supervised release and the conditions imposed for it. Thus, as the Sentencing Guidelines emphasize, when a defendant violates those conditions, his violation is not treated as new criminal conduct but rather as a "breach of trust" in failing to abide by the conditions of his original sentence, for which the law imposes "sanctions." U.S.S.G. ch. 7, pt. A, introductory cmt. 3(b);
 
 see also
 

 United States v. Crudup
 
 ,
 
 461 F.3d 433
 
 , 437-38 (4th Cir. 2006). When such a violation also involves criminal conduct, the Guidelines leave punishment for that "to the court responsible for imposing the sentence for that offense."
 
 Id
 
 . Recognizing the distinction between original sentencing and revocation sentencing, the Sentencing Commission has adopted "revocation policy statements" that provide sanctions for "three broad grades of violations," formalizing an approach that provides district courts with "greater flexibility" than would be provided by specific revocation guidelines to determine the appropriate sanction. U.S.S.G. ch. 7, pt. A, introductory cmt. 3.
 

 Consistent with this framework, we have held that a court of appeals reviewing a district court's revocation sentence must adopt a more "deferential appellate posture" than when reviewing original sentences to "account [for] the unique nature of supervised release revocation sentences."
 
 Crudup
 
 ,
 
 461 F.3d at 438-39
 
 (citations omitted);
 
 see also
 

 United States v. Moulden
 
 ,
 
 478 F.3d 652
 
 , 657 (4th Cir. 2007) (describing the "modified reasonableness analysis" for reviewing sentences imposed upon revocation of probation and supervised release) (internal quotation marks omitted). In this vein, "a [district] court's statement of its reasons for going beyond non-binding
 
 policy statements
 
 in imposing a [revocation] sentence ... need not be as specific as has been required when courts departed from
 
 guidelines
 
 that were, before
 
 Booker
 
 , considered to be mandatory."
 
 Crudup
 
 ,
 
 461 F.3d at 439
 
 (quoting
 
 United States v. Lewis
 
 ,
 
 424 F.3d 239
 
 , 245 (2d Cir. 2005) ). For these reasons, while original sentences are reviewed for "reasonableness," we have recognized that even an unreasonable revocation sentence may stand unless it is
 
 plainly
 
 unreasonable.
 
 Id
 
 . at 438-39.
 

 This structure of appellate review of revocation sentences still addresses distinctly both
 
 procedural
 
 reasonableness and
 
 substantive
 
 reasonableness, but on the more deferential basis noted. A revocation sentence passes procedural muster if it is supported by "a sufficient explanation so that we may effectively review the reasonableness of the sentence," which must encompass "an assurance that the sentencing court considered the [applicable sentencing] factors with regard to the particular defendant before [it] and also considered any potentially meritorious arguments raised by the parties with regard to sentencing."
 
 Moulden
 
 ,
 
 478 F.3d at 657
 
 . And a sentence passes substantive muster if the totality of the circumstances indicates that the court had a " 'proper basis for its conclusion' that the defendant should receive the sentence imposed."
 
 United States v. Slappy
 
 ,
 
 872 F.3d 202
 
 , 207 (4th Cir. 2017) (quoting
 
 Crudup
 
 ,
 
 461 F.3d at
 
 440 ).
 

 As with original sentencing, a revocation sentence that is within the recommended Guidelines range is "presumed reasonable."
 
 United States v. Webb
 
 ,
 
 738 F.3d 638
 
 , 642 (4th Cir. 2013). And although the procedural and substantive aspects of review are distinct, less explanation is required for such a sentence than for a sentence that departs from the Guidelines.
 
 See
 

 United States v. Thompson
 
 ,
 
 595 F.3d 544
 
 , 547 (4th Cir. 2010) (noting that less explanation is required when imposing a within-Guidelines range revocation sentence);
 
 see also
 

 Rita v. United States
 
 ,
 
 551 U.S. 338
 
 , 356-57,
 
 127 S.Ct. 2456
 
 ,
 
 168 L.Ed.2d 203
 
 (2007) (applying same principle in the context of original sentencing). Similarly, "a major departure [from the Guidelines] should be supported by a more significant justification than a minor one."
 
 Gall v. United States
 
 ,
 
 552 U.S. 38
 
 , 50,
 
 128 S.Ct. 586
 
 ,
 
 169 L.Ed.2d 445
 
 (2007) ;
 
 see also
 

 Slappy
 
 ,
 
 872 F.3d at 208
 
 (concluding that the district court's "failure to address [the defendant's] arguments in favor of a
 
 within-policy-statement-range sentence
 
 constitute[d] procedural error") (emphasis added);
 
 id
 
 . at 209 (explaining that "the court's failure to address Slappy's nonfrivolous arguments in favor of a within-range sentence was compounded by its failure to explain why it was necessary to impose the statutory maximum sentence").
 

 In this case, therefore, the dispositive question reduces to whether, in context, the district court's explanation of Gibbs's sentence provided a sufficient assurance that it considered his arguments for a downward variance.
 
 See
 

 Moulden
 
 ,
 
 478 F.3d at
 
 657 ;
 
 see also
 

 Slappy
 
 ,
 
 872 F.3d at 210
 
 (holding that the explanation "must provide enough ... to assure this Court that it considered the parties' arguments and had some basis for choosing the imposed sentence").
 

 Gibbs's primary argument for why he should have received a downward-variance sentence was that the recommended sentence would cause hardship to his family due to both his absence and the loss of income that he otherwise could provide. In support of this argument, Gibbs's counsel asserted that Gibbs had certain job skills and a high degree of employability, though Gibbs provided no evidence to support those assertions. He now maintains that the district court responded to his arguments with a single sentence-that Gibbs had "a scant employment record and little in the way of marketable job skills" although he "did make an effort to obtain his GED"-contrary to his counsel's representations
 at the revocation hearing. Gibbs also emphasizes that, in response to his request to reconsider the 24-month sentence "for the extreme hardship that it's going to be on his family," the court stated simply, "No change."
 

 We conclude, however, that the record supports the district court's conclusion that Gibbs had a "scant" employment record and job skills. Counsel for Gibbs stated at the revocation hearing that Gibbs went through a program called "Youth Build" "where he learned a significant amount of skills" relating to building a house. But she provided no evidence that Gibbs ever applied that learning and used those skills. Indeed, in relating Gibbs's job experience, counsel for Gibbs stated only that he had been employed at a chicken plant and at a landscaping company, neither of which involved building a house or even working on a house, and she never specified the duration of those positions. Thus, it was hardly "contrary" to the record for the court to have concluded that Gibbs had only scant work experience and job skills.
 

 And as to the hardship that a 24-month sentence would impose on Gibbs's family, the court clearly considered it. Indeed, when explicitly asked to do so, the court stated, "All right." After giving the argument thought, however, the court announced that it was not prepared to deviate from the 24-month recommendation. In the same way, the court considered and rejected Gibbs's request for a downward variance based on his cooperation with law enforcement. When Gibbs's counsel asked the court to consider a downward variance, "as the United States has said they believe that he should have ... something coming off," the court's response of "All right" also covered that request. But, as noted, the court rejected the request, determining to remain with the recommended 24-month sentence.
 

 This consideration of Gibbs's arguments comports with the standard for original sentencing articulated in
 
 Rita
 
 and,
 
 a fortiori
 
 , satisfies the more relaxed standard for revocation sentencing. As the Supreme Court stated in
 
 Rita
 
 , "[w]here a matter is as conceptually simple as in the case at hand and the record makes clear that the sentencing judge
 
 considered
 
 the evidence and arguments, we do not believe the law requires the judge to write more extensively."
 
 551 U.S. at 359
 
 ,
 
 127 S.Ct. 2456
 
 (emphasis added);
 
 see also
 

 id
 
 . at 359-60,
 
 127 S.Ct. 2456
 
 (recognizing that the sentencing court did not address all of the defendant's arguments);
 
 Slappy
 
 ,
 
 872 F.3d at 210
 
 (requiring the court to "provide enough" to indicate "that it
 
 considered
 
 " the defendant's arguments) (emphasis added).
 

 Juxtaposing the district court's responses to Gibbs's arguments for leniency with the court's affirmative statements for why it was imposing the 24-month sentence-the four incidents that violated the terms of Gibbs's supervised release, including two convictions, one for possession of drug paraphernalia and the other for conspiracy to traffic in heroin, as well as Gibbs's long criminal history involving "gang affiliation [and] convictions for assault, marijuana possession, resisting a public officer, possession of stolen goods, trespass, possession of cocaine, possession of a firearm by a felon, possession of a handgun by a minor, [and] carrying a concealed weapon"-the court clearly and properly manifested its reasons for giving the recommended 24-month sentence. The court's comments about Gibbs's arguments, while not extensive, nonetheless do enable us to "effectively review the reasonableness of [Gibbs's] sentence" with the "assurance" that the court "
 
 considered
 
 any potentially meritorious arguments raised by [Gibbs] with regard to [his] sentencing."
 

 Moulden
 
 ,
 
 478 F.3d at 657
 
 (emphasis added). If the court had determined to depart from the Guidelines, perhaps a more fulsome explanation might have been required.
 
 See
 

 Gall
 
 ,
 
 552 U.S. at 50
 
 ,
 
 128 S.Ct. 586
 
 . But in this case, the district court imposed the recommended Guidelines sentence, and the procedure that the court followed in imposing the revocation sentence was not unreasonable-and certainly not
 
 plainly
 
 unreasonable.
 
 See
 

 Crudup
 
 ,
 
 461 F.3d at
 
 439 ;
 
 see also
 

 Slappy
 
 ,
 
 872 F.3d at 208
 
 (noting that "[i]f a revocation sentence-even an unreasonable one-is not 'plainly unreasonable,' we will affirm it").
 

 Gibbs argues that our decisions in
 
 Thompson
 
 and
 
 Slappy
 
 , where we reviewed and vacated revocation sentences, support his contention that the district court's sentence here was procedurally unreasonable. But we find his reliance on these cases misplaced.
 

 In
 
 Thompson
 
 , after recognizing that a "district court commits significant procedural error where it 'fail[s] to adequately explain the chosen sentence,' "
 
 595 F.3d at 547
 
 (quoting
 
 Gall
 
 ,
 
 552 U.S. at 51
 
 ,
 
 128 S.Ct. 586
 
 ) (alteration in original), we vacated the revocation sentence, even though it was within the range recommended by the Sentencing Guidelines, because the sentence was
 
 supported by no explanation whatsoever
 
 . As we observed, the district court "simply stated: 'It's the judgment of the Court the defendant be committed to the custody of the Federal Bureau of Prisons for a term of 18 months.' "
 
 Id.
 
 at 547. We explained aptly:
 

 We may be hard-pressed to find any explanation for within-range, revocation sentences insufficient given the amount of deference we afford district courts when imposing these sentences; but a district court may not simply impose sentence without giving
 
 any
 
 indication of its reasons for doing so.
 

 Id.
 

 Here, of course, the district court did in fact give its reasons for the sentence imposed, and it considered and addressed, although briefly, Gibbs's arguments for a downward variance. Contrary to Gibbs's argument,
 
 Thompson
 
 thus supports upholding the revocation sentence of the district court as procedurally reasonable.
 

 Nor does our decision in
 
 Slappy
 
 compel a different result. During the revocation hearing, the defendant asked the district court to impose a term of imprisonment
 
 within the range
 
 recommended by the Sentencing Guidelines, which was 7 to 13 months' imprisonment, advancing several arguments for leniency related to "her post-incarceration conduct and attempts at rehabilitation."
 
 Slappy
 
 ,
 
 872 F.3d at 205
 
 . Instead of imposing a within-Guidelines sentence, however, the district court imposed an upward-variance sentence of 36 months' imprisonment-the statutory maximum-"without addressing [the defendant's] arguments."
 

 Id.
 

 at 206 ;
 
 see also
 

 id.
 

 at 208
 
 (noting that the district court "did not so much as mention her arguments"). In those circumstances, we vacated the revocation sentence, concluding that "[b]ecause the court failed to address Slappy's nonfrivolous arguments
 
 in favor of a within-range sentence
 
 or to explain why the statutory maximum sentence was necessary, we find that Slappy's revocation sentence [was] procedurally unreasonable."
 
 Id
 
 . at 209-10 (emphasis added). Thus, while the district court in
 
 Slappy
 
 entered an upward-variance sentence without even "mention[ing] [the defendant's] arguments,"
 
 id
 
 . at 210, the district court here imposed a within-Guidelines sentence and did address, albeit briefly, Gibbs's arguments. More importantly, the record here, taken as a whole, makes clear that the court, as required,
 
 considered
 
 those arguments.
 

 At bottom, we conclude that the district court imposed a procedurally reasonable revocation sentence, and, because Gibbs does not argue that his sentence was substantively unreasonable, we affirm. In doing so, we recognize that because Gibbs's revocation sentence is not unreasonable, it certainly cannot be plainly so, as would be required for us to disturb it.
 
 See
 

 Slappy
 
 ,
 
 872 F.3d at
 
 208 ;
 
 Crudup
 
 ,
 
 461 F.3d at 439
 
 .
 

 AFFIRMED