FILED:  October 5, 2018

**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-4037**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ERICK JEMONTA GIBBS,

Defendant - Appellant.

WYNN, Circuit Judge, voting to redesignate the panel opinion as unpublished or vacate it as moot:

On July 16, 2018, a divided panel of this Court ruled that a district court did not err in sentencing Defendant Erick Gibbs ("Defendant") to 24 months' imprisonment for violating the terms of his supervised release, notwithstanding that the district court did not address several of Defendant's nonfrivolous arguments in favor of a downward variance. *United States v. Gibbs*, 897 F.3d 199, 209 (4th Cir. 2018). In dissent, Chief Judge Gregory asserted that the majority opinion conflicted with this Court's earlier decision in *United States v. Slappy*, 872 F.3d 202, 208 (4th Cir. 2017), which held that "a district court, when imposing a revocation sentence, must address the parties' nonfrivolous arguments in favor of a particular sentence, and if the court rejects those

arguments, it must explain why in a detailed-enough manner that this Court can meaningfully consider the procedural reasonableness of the revocation sentence imposed." Thereafter, Defendant petitioned this Court to rehear his case en banc.

But Defendant can get no meaningful relief from his petition to rehear because Defendant is now released from prison. Accordingly, Defendant's case is now moot, and the panel opinion should be vacated "so as to prevent a decision, 'unreviewable because of mootness, from spawning any legal consequences.'" *Int'l Refugee Assist. Proj. v. Trump*, 876 F.3d 116, 119 (4th Cir. 2017) (Niemeyer, J., dissenting) (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 41 (1950)). Indeed, because it is undisputed that the underlying *Gibbs* panel opinion does not, and cannot, overrule the binding precedent of *Slappy,* there isn't even a reason to publish the underlying opinion in this matter.

In deciding to expedite the filing of the denial of Defendant's petition to rehear en banc, this Court took the unusual, but in my opinion welcomed, step of entering that order before opinions supporting and dissenting from the order were prepared for filing. This procedural change is especially needed in criminal cases in which the delay of this Court in waiting for separate concurring and dissenting opinions can result in gross injustice and unfairness to a defendant. That is precisely what happened in *United States v. Surratt* ("*Surratt II*"), 855 F.3d 218 (4th Cir. 2017).

Recall from *Surratt*, the inescapable conclusion that this Court's failure to timely issue opinions in an en banc proceeding led to, what this Court deemed, was the mooting of a habeas petitioner's appeal, thereby forcing the petitioner—and other similarly

2

situated prisoners—to unnecessarily spend several more years in prison. Surratt pled guilty to conspiracy to possess with intent to distribute more than 50 grams, but less than 150 grams, of crack cocaine. *Id.* at 222 (Wynn, J., dissenting). At the time Surratt was first sentenced, a panel of this Court had incorrectly construed 21 U.S.C. § 841(b)(1), thereby subjecting Surratt to a mandatory life sentence. *Id.* at 220. After we identified and corrected our error, Surratt filed a successive habeas petition, seeking to correct his errant sentence. *Id.* Notwithstanding that the government *supported* Surratt's request for resentencing, this Court appointed independent counsel to argue that Surratt could not avail himself of 28 U.S.C. § 2255's "savings clause" to challenge his (incorrect) mandatory life sentence. *Id.* at 220, 224. On July 31, 2015, a sharply divided panel of this Court agreed with the appointed counsel's argument, and therefore denied Surratt relief. *United States v. Surratt* ("*Surratt I*"), 797 F.3d 240, 253 (4th Cir. 2015), *reh'g en banc granted*, Dec. 2, 2015.

Surratt then petitioned this Court for en banc rehearing, which we granted on December 2, 2015. *Surratt II*, 855 F.3d at 224 (Wynn, J., dissenting). On March 23, 2016, this Court reheard argument of Surratt's appeal. *Nearly 10 months later*—and still without a decision from this Court—President Obama commuted Surratt's life sentence to a 200-month term of imprisonment, a prison term still well in excess of Surratt's then-applicable range under the Guidelines. *Id.* at 226. Without being notified of the commutation by either party, this Court independently learned of the commutation and then directed the parties to address whether the commutation mooted Surratt's habeas petition. *Id.* at 225. On April 21, 2017—*more than two years after* this Court granted

3

Surratt's petition for rehearing en banc—this Court dismissed the action as moot, notwithstanding that there was no dispute that if we vacated Surratt's commuted sentence, he would likely be released because his new sentence would be shorter than his time-served. *Id.* at 226.

Subsequently, a panel of this Court *agreed* with the position Surratt advanced in his en banc rehearing petition. *See United States v. Wheeler*, 886 F.3d 415, 429 (4th Cir. 2018). And this Court declined to rehear *Wheeler* en banc, *United States v. Wheeler*, 734 F. App'x 892 (4th Cir. 2018) (mem.), suggesting that Surratt would have prevailed on en banc rehearing had this Court not taken so long to resolve his appeal. Notably, this Court stayed Wheeler's appeal for several years while *Surratt* was pending—a stay which ultimately was for naught as we failed to resolve Surratt's case in a timely fashion— illustrating how this Court's delay prejudiced other wrongly sentenced prisoners as well.

*Surratt*'s procedural history reinforces the extraordinary efforts this Court has taken to keep the panel opinion in this case on the books. Put simply, in *Surratt* this Court waited until the completion of all separate and dissenting opinions and thereby materially disadvantaged both the prisoner in that case and other wrongly sentenced prisoners. By contrast, here this Court eschews what has been, to date, the standard approach and denies Defendant relief without waiting until all opinions are ready for filing. This Court does so, apparently, for the sole reason of keeping in place the panel majority's opinion, which Chief Judge Gregory's dissent asserts contradicts this Court's precedent in a manner that prejudices the interests of criminal defendants. Accordingly, the common thread running through this Court's starkly different approaches to resolving

4

Surratt and Defendant's appeals is that both efforts had the effect of prejudicing the interests of criminal defendants. A legal system constitutionally structured to err in favor of criminal defendants should not operate in such a fashion.

To be sure, the panel opinion in this matter is inconsequential. If, as the panel majority maintains, *Gibbs*, 897 F.3d at 206 (majority op.), the opinion is consistent with this Court's opinion in *Slappy*, then it adds nothing to this Court's precedent. By contrast, if the panel majority opinion conflicts with *Slappy*, as Chief Judge Gregory asserts, *id.* at 209–12, then the majority opinion is without legal force because under black-letter Circuit law *Slappy* controls. *See McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (en banc) ("When published panel opinions are in direct conflict on a given issue, the earliest opinion controls, unless the prior opinion has been overruled by an intervening opinion from this court sitting *en banc* or the Supreme Court."). Thus, regardless of whether the panel majority or the dissent is correct as to whether the majority opinion keeps faith with this Court's precedent, the panel majority opinion here is without legal effect. The most likely outcome of keeping the panel majority opinion on the books is to confuse litigants as to this Court's precedent.

When a court—on its own initiative and without the request of either party—diverges from its usual practice and takes action that disfavors certain litigants and favors others, the public reasonably perceives that court as abandoning its proper role as independent, neutral arbiter. But here, this Court's decision to abandon its usual practice and rule on Defendant's petition without awaiting filing of concurring, separate, and dissenting opinions, establishes the practice and opportunity to avoid the injustice that

5

befell Raymond Surratt and so many others. At the least, this Court now establishes a means to prohibit concurring, separate, and dissenting opinions from exercising a "pocket veto" to delay or deny fairness and justice.