**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-4701**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

FRANCISCO CELEDON,

        Defendant - Appellant.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Henry E. Hudson, Senior District Judge.  (3:23-cr-00086-HEH-1)

---

Argued:  September 26, 2025             Decided:  January 30, 2026

---

Before DIAZ, Chief Judge, GREGORY, Circuit Judge, and KEENAN, Senior Circuit Judge.

---

Vacated and remanded by published opinion.  Judge Gregory wrote the opinion, in which Judge Keenan joined.  Chief Judge Diaz wrote a dissenting opinion.

---

**ARGUED:**  Patrick L. Bryant, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Shea Gibbons, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.  **ON BRIEF:**  Geremy C. Kamens, Federal Public Defender, Amy L. Austin, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Jessica D. Aber, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

GREGORY, Circuit Judge:

Francisco Celedon appeals his 36-month sentence, which the district court imposed after revoking Celedon's term of supervised release. Celedon argues that his revocation sentence is plainly unreasonable because the district court failed to sufficiently explain why it imposed the statutory maximum sentence. We agree, and for the reasons that follow, we vacate Celedon's revocation sentence and remand for resentencing.

**I.**

On June 16, 2015, Francisco Celedon pled guilty to possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), and reentry of deported aliens, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(1). The U.S. District Court for the Middle District of Alabama sentenced Celedon to 65 months for the drug offense and 24 months for the reentry offense, to run concurrently. The district court also imposed terms of supervised release—five years for the drug offense, and one year for the reentry offense, also served concurrently. Celedon was released from federal custody on December 13, 2019. Celedon was subsequently removed from the United States on December 30, 2019.

More than three years later, in April 2023, state law enforcement, acting on a tip about a cocaine delivery, encountered Celedon in Chesterfield County, Virginia, with 6.053 kilograms of cocaine in his possession. In June 2023, a federal grand jury indicted Celedon on one count of possession with the intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii). Celedon pled guilty to the indicted count on July 12, 2023.

2

On July 10, 2023, the United States Probation Office filed a petition for action on supervised release, which stated that Celedon had violated the terms of his supervised release in two ways:  by engaging in new criminal conduct, and by failing to remain outside of the United States.  Celedon's sentencing and revocation hearings were both held on November 9, 2023.

At the sentencing hearing, the district court noted that based on Celedon's offense level of 27, and criminal history category of II, his advisory sentencing range would be 78 to 98 months.  Given the statutory minimum of 120 months for the offense, however, Celedon was subjected to a restricted guideline range of 120 months.  Both parties requested that the court impose the statutory minimum.  Celedon emphasized that while his role as courier was ultimately voluntary, his decision to participate was, in part, made because he feared the potential dire consequences for him and his family if he refused to obey the cartel members.  Having grown up surrounded by gang violence, Celedon "kn[ew] very well" the consequences when "cartel members come into the community and ask people to do things and they don't do it."  J.A. 33–34.  The court imposed a sentence of 120 months, followed by a period of supervised release for five years.

At the revocation hearing, Celedon admitted to the two violations.  The Government asked the court to impose the statutory maximum of 36 months, citing Celedon's prior conviction arising from similar conduct, the large volume of drugs involved in the underlying case, and Celedon's "lack of respect for the law."  J.A. 46–47.

Celedon requested that no additional time of imprisonment be imposed, but if the court were to impose a term of imprisonment, he asked that the sentence be a concurrent

3

term within the guideline range of 12 to 18 months. Celedon made two primary arguments in support of this request. First, the 120-month sentence adequately accounted for the sentencing goals of the court and any added time would not further those goals, since he is someone who "otherwise does not engage in criminal activity, is a law-abiding person who works, [and] who supports his family." J.A. 48. Second, since Celedon was subject to deportation, he would be ineligible to participate in programs offered within the Bureau of Prisons that would otherwise allow for a significant reduction in his sentence.

In response to Celedon's argument, the court remarked that "in a typical case this Court would find your attorney's presentation to be very, very compelling." J.A. 50. The district court then explained the two factors weighing heavily on its mind that it hoped Celedon would address during his allocution: (1) the volume amount of cocaine involved in the underlying crime; and (2) that Celedon had previously been convicted of similar conduct. When Celedon addressed the court, he reiterated his remorse for his actions and for the harm that occurred, but emphasized again that his decision to participate felt somewhat coerced. The district court explained its decision to impose the maximum 36-month revocation sentence:

> Well, having found you in violation of the conditions of your supervised release, and having put earlier on the record my feelings about this being your second major possession of drugs with the intent of putting in [sic] on the streets and affecting the lives of other people, this Court believes that a sentence that is adequate, but not longer than necessary, to reflect the breach of trust in violating the law a second time after receiving a substantial sentence in Alabama, is commitment to the U.S. Bureau of Prisons for a term of 36 months. And it will run consecutive to the sentence I imposed earlier this morning.

J.A. 51. Celedon timely appealed his revocation sentence.

4

**II**.

While a district court must consider the Chapter Seven policy statements in the Sentencing Guidelines Manual and other statutory provisions applicable to revocation sentences, "the court has broad discretion to impose a particular sentence" upon revocation of a defendant's term of supervised release. *United States v. Thompson*, 595 F.3d 544, 547 (4th Cir. 2010) (internal citations omitted). Though this discretion is broad, it is not unlimited. *United States v. Slappy*, 872 F.3d 202, 206 (4th Cir. 2017). A revocation sentence will be affirmed unless it is above the statutory maximum or plainly unreasonable. *United States v. Patterson*, 957 F.3d 426, 436 (4th Cir. 2020). Even if it is plainly unreasonable, the sentence will still be affirmed if the errors are harmless. *See Thompson*, 595 F.3d at 548.

For a revocation sentence to be plainly unreasonable, we must first determine whether the sentence is procedurally or substantively unreasonable. *Patterson*, 957 F.3d at 436. A revocation sentence "is procedurally reasonable if the district court adequately explains the chosen sentence after considering the Sentencing Guidelines' nonbinding Chapter Seven policy statements and the applicable 18 U.S.C. § 3553(a) factors." *United States v. Coston*, 964 F.3d 289, 297 (4th Cir. 2020) (quoting *Slappy*, 872 F.3d at 207); *see* 18 U.S.C. § 3583(e) (listing the applicable sentencing factors for revocation proceedings). A revocation sentence is substantively reasonable if the court sufficiently states an appropriate basis for imposing its sentence. *United States v. Crudup*, 461 F.3d 433, 440 (4th Cir. 2006). If a sentence is "procedurally unreasonable and . . . the district court's errors are not harmless, we need not consider whether [the] sentence is substantively

5

reasonable." *Slappy*, 872 F.3d at 210 (citing *United States v. Carter*, 564 F.3d 325, 330 n.4 (4th Cir. 2009)). Only if we find a revocation sentence unreasonable do we consider whether it is plainly unreasonable—meaning the "unreasonableness is 'clear' or 'obvious.'" *Patterson*, 957 F.3d. at 437 (quoting *Crudup*, 461 F.3d at 437).

When imposing a sentence, the sentence must be "supported by a sufficient explanation" by the district court to ensure affective appellate review. *United States v. Gibbs*, 897 F.3d 199, 204 (4th Cir. 2018) (internal citations omitted). This requires the sentencing court to "consider the defendant's nonfrivolous arguments for a downward departure, impose an individualized sentence based on the characteristics of the defendant and the facts of the case, and explain the sentence chosen." *United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017). In a revocation sentence, the "court need not be as detailed or specific" as it would in a post-conviction sentence but must still provide a "statement of reasons for the sentence imposed." *Thompson*, 595 F.3d at 547 (4th Cir. 2010).

The policy guideline statements prepared by the Sentencing Commission provide a sentencing range based on the grade of the violation and the criminal history category of the defendant at the time of the original sentence. *See* U.S. Sent'g Guidelines Manual § 7B1.4 (U.S. Sent'g Comm'n 2023). If, after consideration, the sentencing court concludes a sentence outside the advisory guideline range is appropriate, that departure "should be supported by a more significant justification" than would be otherwise required for an in-range sentence. *Slappy*, 872 F.3d at 207 (citing *Gall v. United States*¸ 552 U.S. 38, 50 (2007)). To provide an adequate explanation and proof of its individualized assessment, while a district court need not "tick through" every subsection of § 3553(a), it

6

must be evident that the district court "considered the § 3553(a) factors with regard to the particular defendant." *United States v. Moulden*, 478 F.3d 652, 657 (4th Cir. 2007).

## III.

Celedon challenges his revocation sentence as plainly procedurally unreasonable because the district court failed to sufficiently explain why it imposed the statutory maximum sentence in an upward departure from the policy statement range. The Government argues that the reason for the sentence was so self-evident that the court did not need to provide a detailed explanation to justify the sentence it imposed. We agree with Celedon that the district court failed to explain why it was necessary to impose the statutory maximum sentence.

Celedon put forth several mitigating circumstances and characteristics in arguing for a downward variance, including that his decision was "just really out of [his] hands," due to the possibility of cartel reprisals if he refused. J.A. 51.[*] The district court, in its comments before Celedon's allocution or in issuing its sentence, did not acknowledge the circumstances that led to Celedon's decision to violate the terms of his supervised release, reenter the United States, and engage in new criminal conduct. The record does not suggest that the district court found Celedon's mitigating circumstances uncredible, or that it

---

[*] In addition to making this point at the revocation hearing, Celedon had explained in the earlier sentencing hearing that he had grown up around gang violence and understood that to refuse a cartel request was to risk brutal consequences. *See* J.A. 33–34. The sentencing hearing and revocation hearing occurred back-to-back on the same day, and Celedon's attorney explicitly incorporated those earlier arguments by reference. *See* J.A. 47 ("[F]or all the reasons I stated on the prior sentencing is he—he took these actions, yes.")

considered this factor before issuing the statutory maximum sentence it could impose. With nothing in the record suggesting that the district court considered Celedon's explanation of mitigating circumstances, it is not evident on appeal that the district court considered the application of the § 3553(a) factors to Celedon's case. And without any indication that the district court evaluated Celedon's proffered mitigating circumstances, the upward departure is not adequately explained.

According to the district court, the sentence reflected "the breach of trust in violating the law a second time." J.A. 51. The Chapter Seven policy statements in the federal Guidelines manual instructs courts to "sanction primarily the defendant's breach of trust" when fashioning all revocation sentences. U.S. Sent'g Guidelines Manual § 7A.3(b) (U.S. Sent'g Comm'n 2023). While this is, therefore, an appropriate basis for a revocation sentence, the district court did not explain why the breach of trust in Celedon's case was so severe as to require the statutory maximum—especially given Celedon's own arguments that the breach was made under some level of coercion. If the district court had credited Celedon's account, the "breach of trust" inherent in Celedon's criminal activity under duress would likely not rise to the level that warranted the statutory maximum sentence. *Cf. Dixon v. United States*, 548 U.S. 1, 6–7 (2006) (recognizing duress as an affirmative defense to a criminal charge). Of course, the district court was by no means required to find Celedon's explanation of his behavior credible. But since the "very purpose of a revocation hearing is to determine the gravity of the [defendant's] breach of trust," the district court must indicate that it considered Celedon's "nonfrivolous argument" that his

8

breach of trust was less severe than it appeared. *United States v. Wynn*, 786 F.3d 339, 343 (4th Cir. 2015); *Blue*, 877 F.3d at 518.

The Government argues that the court's comments responding to Celedon's arguments provide sufficient evidence of the court's reasoning for the sentence it imposed, relying on the proposition that sentencing courts need not "spell out what the context of its explanation ma[kes] patently obvious." *United States v. Montes-Pineda*, 445 F.3d 375, 381 (4th Cir. 2006). Before allowing Celedon to address the court, the court gave a brief reasoning as to what was preventing the court from being otherwise compelled by Celedon's argument, specifically naming two factors: (1) that Celedon had previously been convicted of this conduct; and (2) the large volume of drugs involved. Relying upon these reasons, though never directly addressing Celedon's coercion argument, the district court imposed the maximum sentence of 36 months, doubling the high end of the guideline recommendation of 12-18 months.

The district court's failure to engage at all with Celedon's argument for a within-guidelines sentence is error. When imposing a sentence within the guidelines, a sentencing court generally need offer only a brief indication that it had considered arguments for an alternative sentence. *See Gibbs*, 897 F.3d at 204–205 (district court's response of "all right," followed by a pause, sufficiently indicated that the court had considered an argument for a variance). However, when imposing a sentence that constitutes an upwards departure, our precedent requires a more robust explanation. *See id.* at 204 (distinguishing *Slappy*, 872 F.2d at 208-209); *see also Slappy*, 872 F.2d at 208 (holding that "the district court's failure to address [defendant's] arguments in favor of a within-policy-statement

9

range constitute[d] procedural error"). And the greater the departure from the guidelines, the more significant the sentencing court's justification must be. *Gall v. United States*, 552 U.S. 38, 50 (2007).

The district court imposed a revocation sentence of 36 months—double the guideline range—without addressing Celedon's nonfrivolous argument in favor of a within-range sentence. Since the court imposed a sentence substantially above the guideline range, it must present a "more significant justification" than ordinarily required. *Slappy*, 872 F.3d at 207. We take no position on whether the district court's emphasis on other factors, paired with its neglect of Celedon's argument, would have been sufficient to justify a within-range sentence. But it is certainly insufficient to meet the heightened standard of justification required for an above-range sentence, particularly because Celedon's argument bore directly on the breach-of-trust analysis at the core of the revocation proceeding. Therefore, Celedon's sentence is procedurally unreasonable.

We must next determine whether the revocation sentence is plainly unreasonable. For a sentence to be plainly unreasonable, it must run contrary to clearly settled law. *Thompson*, 595 F.3d at 548. It is well-settled precedent in this Circuit that the district court has an obligation "to provide some basis for appellate review when imposing a revocation sentence, however minimal that basis may be." *Id.* (citing *Moulden*, 478 F.3d at 657). The district court must "provide enough of an explanation to assure this Court that it considered the parties' arguments and had some basis for choosing the imposed sentence." *Slappy*, 872 F.3d at 210. Here, the district court did not provide assurances that it considered the advisory range nor, as discussed above, indicate that it considered Celedon's nonfrivolous

10

argument for a sentence within the advisory range. Since it runs contrary to settled law, Celedon's sentence is plainly unreasonable.

We further hold that the district court's procedural errors are not harmless. The Government contends that any procedural error was harmless because the court "repeatedly stated the two key factors driving its revocation sentence, and the court imposed the maximum sentence it was able to impose." Resp. Br. at 18. The Government "may avoid reversal only if it demonstrates that the error 'did not have a substantial and injurious effect or influence' on the result." *United States v. Boulware*, 604 F.3d 832, 838 (4th Cir. 2010) (quoting *United States v. Lynn*, 592 F.3d 572, 585 (4th Cir. 2010)).

The Government has not met its burden of proving that these errors were harmless. As described above, the district court declined to consider Celedon's claims of duress that, if credited, would have lessened the severity of Celedon's breach of trust. At sentencing, the district court made clear that it imposed the maximum sentence largely—if not entirely—to "reflect the breach of trust in violating the law a second time." J.A. 51. Given the emphasis that the district court placed on Celedon's breach of trust, and the possibility that engaging with Celedon's explanation would have reduced the gravity of the breach, we cannot say that the district court's failure to engage was harmless.

## IV.

For these reasons, we vacate Celedon's revocation sentence and remand for resentencing.

*VACATED AND REMANDED*

11

DIAZ, Chief Judge, dissenting:

The majority and I agree that we "will affirm a revocation sentence if it is within the statutory maximum and is not plainly unreasonable." *United States v. Patterson*, 957 F.3d 426, 436 (4th Cir. 2020). And no one disputes that the district court imposed a revocation sentence within the statutory maximum. The narrow question then is whether the court's sentence was plainly unreasonable. Here, I part ways with my colleagues.

In my view, this 36-month revocation sentence wasn't unreasonable—much less plainly so—because the district court acknowledged that the defendant's arguments for a lesser sentence would typically be compelling but then explained why other factors negated them. And even assuming error, it was harmless.

I.

A.

The district court held Celedon's sentencing and revocation hearings back-to-back. During the sentencing hearing, Celedon's counsel explained his client "grew up in Mexico . . . surrounded by gang violence," and that when "[p]eople come to him and ask him to do things . . . he can choose to say no and face dire consequences." J.A. 33. Counsel continued that Celedon "could have said no" to transporting cocaine, "but it would bring with it consequences perhaps more dire than what he's facing here today." *Id.* And in response to the district court's statement that Celedon was fortunate to have a supportive family, counsel agreed, stating that "he wants to keep that family, and he wants to keep them safe." J.A. 34.

12

In his allocution, Celedon expressed remorse but said the decision to commit the crime wasn't his:

> You know, sometimes, you know it just — it put me in a situation that, you know, like my lawyer was saying said, you know, that, you know, it wasn't up to me to do this. But, you know, I do feel remorse, you know. I am sorry about this.
>
> About this 10 years, you know, are going to be a long time. And I've got a lot to think about, you know, in changing my life for the better, you know, to try to move away from where I used to live and from the violence, and all that. So, I mean, like I said, Your Honor, I do feel remorse, and that's all I have to say.

[J.A. 37.] The district court offered "to go through the presentence report" and "to put [its] analysis of the 3553(a) factors on the record," but the parties waived that. J.A. 35–36.

## B.

At the revocation hearing, Celedon's counsel said generally that "for all the reasons I stated on the prior sentencing is he — he took these actions, yes." J.A. 47. And then counsel switched gears and said that "[w]e don't know the circumstances" of Celedon's reentry to the United States. J.A. 48. Counsel asked rhetorically: "Was he ordered back into the country to do this? Was he threatened with death or death to a family member if he didn't do this?" *Id.*

Celedon's counsel then asked the court to impose a twelve-to-eighteen-month sentence for two reasons: 1) Celedon "otherwise does not engage in criminal activity [and] is a law-abiding person who works" and 2) he is subject to deportation and thus ineligible for Bureau of Prisons programs that could reduce his sentence length. J.A. 48–49.

The district court responded:

13

> Mr. Celedon, in a typical case this Court would find your attorney's presentation to be very, very compelling, but — and I want you to address this when you address the Court. What is disturbing is not only the tremendous volume of cocaine here — do you know how many lives could be touched by 13 pounds of cocaine? That's a lot of dosage units.
>
> And in addition, this is not your first time. You were convicted previously of transporting and possessing huge amounts of drugs for distribution. And that's my mind-set going into this, but I want to hear from you.

J.A. 50–51. In his allocution, Celedon didn't address the issues the court raised. But Celedon expressed remorse for his supervised release violation and stated that "sometimes I don't have a choice," and "sometimes it's just really out of my hands." J.A. 51.

The court then explained and imposed its sentence:

> [H]aving put earlier on the record my feelings about this being your second major possession of drugs with the intent of putting [it] on the streets and affecting the lives of other people, this Court believes that a sentence that is adequate, but not longer than necessary, to reflect the breach of trust in violating the law a second time after receiving a substantial sentence . . . is commitment . . . for a term of 36 months.

J.A. 51.

## II.

A revocation sentence is procedurally reasonable if the district court considers the policy statement range and applicable § 3553(a) sentencing factors and then "adequately explains the chosen sentence." *Patterson*, 957 F.3d at 436. And the sentence is substantively reasonable if the court "state[s] a proper basis" for it. *United States v. Crudup*, 461 F.3d 433, 440 (4th Cir. 2006). The court must also provide "assurance[s]"

14

that it "considered any potentially meritorious arguments raised by the parties." *Patterson*, 957 F.3d at 439 (citation modified).

But a district "court ultimately has broad discretion to . . . impose a term of imprisonment up to the statutory maximum," and we have a "deferential appellate posture" when reviewing such decisions. *Crudup*, 461 F.3d at 439 (citation modified). We don't "evaluate a court's sentencing statements in a vacuum." *United States v. Montes-Pineda*, 445 F.3d 375, 381 (4th Cir. 2006). Rather, we recognize that "[t]he context surrounding a district court's explanation may imbue it with enough content for us to evaluate." *Id.*

If we find a revocation sentence procedurally unreasonable, we then decide whether it's plainly so, "relying on the definition of 'plain' that we use in our 'plain' error analysis." *Crudup*, 461 F.3d at 439. Plain in that context "is synonymous with 'clear' or, equivalently, 'obvious.'" *Id.* (citation modified). A sentence is "*plainly* unreasonable" if it "runs afoul of clearly settled law." *United States v. Slappy*, 872 F.3d 202, 210 (4th Cir. 2017) (citation modified).

And even if a revocation sentence is plainly unreasonable, we will still affirm if the error was harmless. *See United States v. Thompson*, 595 F.3d 544, 548 (4th Cir. 2010). "[T]o be harmless, the government must prove that the error did not have a substantial and injurious effect or influence on the result." *Id.* (citation modified).

III.

15

The majority concludes that the district court didn't consider Celedon's mitigation arguments or explain its reasons for imposing the statutory maximum revocation sentence.[1] I can't agree.

A.

To begin, the majority faults the district court for "not acknowledg[ing] the circumstances that led to Celedon's decision to violate the terms of his supervised release," including "the possibility of cartel reprisals if [Celedon] refused" to commit the drug offense. Majority Op. at 7.

But Celedon didn't make that argument at his revocation hearing.[2] His counsel said that "[w]e don't know the circumstances" of Celedon's reentry to the United States and

---

[1] Celedon also argues that the district court erred by considering the retribution sentencing factor, § 3553(a)(2)(A), to inform its revocation sentence. But he raises the issue for the first time in his reply brief, which is too late. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party [forfeits] an argument by failing to present it in its opening brief.").

Even so, the claim fails. The Supreme Court has clarified that "[i]n the context of a revocation hearing," a district court may not consider the need to provide just punishment for "the underlying crime of conviction." *Esteras v. United States*, 606 U.S. 185, 193-94 (2025). But even if the district court here considered retribution, it did so for Celedon's "breach of trust" in violating the supervised-release conditions. J.A. 51; *see also U.S. Sentencing Guidelines Manual* ch. 7, pt. A(3)(b) (2025)) ("[A]t revocation the court should sanction primarily the defendant's breach of trust" for "failure to follow the court-imposed conditions of probation or supervised release."). *Esteras* doesn't inform that decision.

[2] Celedon did nod at a possible duress defense at the earlier sentencing hearing. But he's never claimed that his plea to the charged drug offense lacked a factual basis, or that the district court had no authority to accept his plea under the circumstances. *See United States v. Romero*, 132 F.4th 1208, 1216 (8th Cir. 2025) (stating that "a district court has discretion to accept a defendant's guilty plea, even if the proffered facts support an affirmative defense, so long as the elements of the offense are established.")

16

asked (without answering) whether it was because someone threatened him or his family. J.A. 48.

A rhetorical question from counsel to the court isn't argument, much less evidence. So what we're left with are the unverified claims about a possible duress defense made at the earlier sentencing hearing.

It's true that our precedent instructs us to consider a district court's sentencing explanation in the full context of a sentencing hearing. *See United States v. Nance*, 957 F.3d 204, 213 (4th Cir. 2020). But the majority doesn't point to any authority to support its reach-back method of analysis, especially where defense counsel presents a different argument at the revocation hearing than he did at the sentencing hearing. And the majority's approach isn't practical because it would require district courts to address *every* mitigating argument a defendant presented at *any* past hearing.

### B.

Next, the majority looks to our *Slappy* decision to highlight two alleged missteps by the district court. First, my friends say that an upward variance from the guidelines requires "a more significant justification" than an in-range sentence and that the defendant's breach of trust alone isn't enough to justify it. Majority Op. at 9 (quoting *Slappy*, 872 F.3d at 207). Second, they say that because the district court didn't state the advisory range, it's unclear whether it considered it. *Id.* at 9–10.

But in *Slappy*, the district court failed to acknowledge the defendant's mitigating circumstances at all or point to any reasons for the upward variance. 872 F.3d at 206.

17

Here, the court acknowledged Celedon's mitigation arguments and then explained why it was varying upward nonetheless.

And in *United States v. Gibbs*, we said it was procedurally reasonable for a district court that imposed a within guidelines sentence to respond simply, "[a]ll right," and pause in response to a defendant's request to reconsider its revocation sentence. Here, the district court's explanation went well beyond that. It recognized that Celedon's arguments would typically "be very, very compelling." J.A. 50. It then explained its "mind-set," giving two countervailing reasons——the quantity of the drugs and the similarity of the revocation offense conduct to the earlier offense conduct—to explain why those arguments didn't move the sentencing needle. J.A. 50. And the court asked Celedon to address those reasons.

*Slappy* requires more explanation from a district court that imposes a revocation sentence outside the guideline range, but "[a] court need not be as detailed or specific when imposing a revocation sentence as it must be when imposing a post-conviction sentence." *Thompson*, 595 F.3d at 547. Requiring more than the district court said here doesn't respect the "broad discretion" we've recognized district courts have to "impose a term of imprisonment up to the statutory maximum," and it doesn't adhere to our "deferential appellate posture." *Crudup*, 461 F.3d at 439 (citation modified).

Lastly, *Slappy* doesn't mandate that the district court parrot the advisory range. There, we simply noted that the court hadn't mentioned the range or explained why it was imposing the statutory maximum. 872 F.3d at 209. But we didn't hold that courts must mechanically recite the range. That's especially true in cases like this, where the district

18

court offered concrete reasons for the upward variance and Celedon's counsel reminded the court of the advisory range moments before it imposed the revocation sentence.

C.

Because Celedon's revocation sentence isn't procedurally unreasonable, it can't be plainly so. In holding otherwise, the majority says that it's merely following "well-settled precedent in this Circuit that the district court must 'provide some basis for appellate review when imposing a revocation sentence, however minimal that basis may be.'" Majority Op. at 10 (quoting *Thompson*, 595 F.3d at 548).

I agree with that principle of law. But as I've explained, there's enough in this record for us to understand the basis for the district court's decision and review it.

IV.

Finally, any error was harmless. Because the district court provided specific reasons for imposing the statutory maximum revocation sentence, it's far fetched to think the court would impose a different sentence on remand. That's particularly so given the vague and unsubstantiated mitigating arguments that Celedon claims were overlooked. In fact, "the notion that having to explain its analysis further [will] change[] the district court's mind . . . is simply unrealistic . . . and remand for resentencing would be a pointless waste of resources." *United States v. Boulware*, 604 F.3d 832, 840 (4th Cir. 2010).

*   *   *

I respectfully dissent.

19