**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4402**

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

    v.

MICHAEL JAMES PATTERSON,

       Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Asheville.  Martin K. Reidinger, District Judge.  (1:99-cr-00075-MR-DLH-5)

Argued:  January 28, 2020                     Decided:  April 24, 2020

Before NIEMEYER, AGEE, and RICHARDSON, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published opinion.  Judge Agee wrote the opinion, in which Judge Niemeyer and Judge Richardson joined.

**ARGUED:**  Jared Paul Martin, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.  **ON BRIEF:**  Anthony Martinez, Federal Public Defender, Charlotte, North Carolina, Joshua B. Carpenter, Appellate Chief, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant.  R. Andrew Murray, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

AGEE, Circuit Judge:

Michael Patterson appeals the revocation of his supervised release and the sentence imposed. On review, we conclude that the district court did not violate Patterson's due process rights when it failed to specify the evidence underlying its finding that he had violated his release conditions, given that the basis of the court's conclusion was evident from the record. We further conclude that the court did not abuse its discretion in finding Patterson had indeed failed to comply with those conditions. We therefore affirm the district court's revocation of Patterson's supervised release.

As to the imposition of the revocation sentence, we hold that the district court procedurally erred by failing to acknowledge its consideration of Patterson's nonfrivolous arguments in favor of a lower sentence. We therefore vacate the sentence and remand for resentencing.

I.

In 2000, the district court sentenced Patterson to 175 months' imprisonment and three years' supervised release after he pled guilty to conspiracy to possess with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Following the end of his term of imprisonment, the court revoked his supervised release for felony possession of drugs on jail premises, sentencing him to twenty-one months' imprisonment and an additional three years' supervised release. After Patterson tested positive for cocaine on six occasions, the court modified the release conditions to include

2

fifteen days' intermittent confinement, to be served on the weekends at the Gaston County, North Carolina Jail.

In September and November 2017, the probation officer filed a set of revocation petitions which altogether asserted eight violations. The pertinent ones are Grade C Violations One (use of cocaine) and Two (failure to appear for drug testing), as well as Grade A Violations Five (possession of heroin with intent to sell and distribute) and Seven (possession of Xanax with intent to sell and distribute).

At the revocation hearing, Patterson admitted to Violations One and Two. The court then heard evidence concerning Violations Five and Seven,[1] which stemmed from an incident in which Patterson's cellmate at the Jail overdosed on a combination of drugs not long after Patterson's arrival in their cell.

We highlight the testimony of three Government witnesses that are particularly relevant for the purposes of this appeal. Danny Lee Clifton, a detention officer, testified that Patterson self-surrendered for his intermittent confinement a day late because he had been in the hospital, later noted for treatment of constipation. After he arrived, jail officers performed a pat-down and search, which did not yield any contraband. (Officers do not typically perform a body cavity search during intake and did not conduct one then.)

Patterson's cellmate, John Edward Perry, testified that Patterson entered the cell after lockdown around 11:00pm. According to Perry, the two discussed Perry's narcotics usage. Patterson then removed from his body cavity a blue latex glove containing what

---

[1] The other violations were dismissed on a Government motion.

3

appeared to be about twenty Xanax pills, oxycodone, and two bags of heroin. He told Perry that he wanted to sell the drugs to have money for his commissary account, to which Perry responded by offering to put Patterson in touch with others to facilitate these sales. Patterson subsequently gave Perry two Xanax pills and a bag filled with a powder that Perry presumed to be heroin. Perry testified that he took the pills, then "folded up a little piece of playing card and scooped [the powder] up and snorted it with that straw that was found in there." J.A. 93. He lost consciousness shortly after ingesting the Xanax and powder.

Scott Randall, another detention officer, testified that shortly before 4:00am, he found Perry collapsed and unresponsive over the cell toilet and called for medical assistance. Perry was transported to a hospital for treatment, where a drug test was administered.[2] While medical personnel attended to Perry, Officer Randall instructed Patterson to wait in the common area. As Officer Clifton observed, video footage showed Patterson entering "the toilet area that you can't see on the video," remaining there for "a couple minutes," then returning to the common area. J.A. 57.

After Perry was transported to the hospital, Officer Clifton searched the cell and found a bag on Perry's bunk. Field tests determined that the bag contained less than a tenth of a gram of an opiate-based powder,[3] and also contained a playing card rolled into a straw.

---

[2] Although the test did not specify what substances Perry ingested, medical records indicated trace amounts of benzodiazepine (potentially Xanax) and opiates (potentially heroin) in his urine.

[3] A forensic scientist later confirmed the substance was a combination of fentanyl, Cyclopropyl fentanyl, heroin, and cocaine.

Officers did not find a blue latex glove or any other contraband in the cell, including a packet of heroin that Perry claimed Patterson had hidden in Perry's deodorant cap.

About a week after his return from the hospital, Perry was interviewed on separate occasions by two Jail officers about the incident. He reported that Patterson had revealed the drugs after entering the cell and subsequently offered Perry Xanax and heroin. At the revocation hearing, Perry testified that he made these statements in the hopes that he would not be charged with possession of drugs on jail premises.

In turn, Patterson called three witnesses. Two jail employees testified that after Perry's overdose, Patterson passed a drug test. Further, a strip search of all "inmates that may have been connected to the incident"—specifically, Patterson and three other newly-processed inmates with drug possession charges—failed to yield any contraband. J.A. 183.

Finally, Dr. Daniel Buffington, an expert witness called to evaluate Perry's medical report, testified that the hospital staff who treated Perry after his overdose described him as "lucid." J.A. 197. During that time, Perry told staff that he took "Zantac"[4] at 8:00pm the night before. J.A. 196. (However, Perry testified he didn't "remember telling them that." J.A. 109.) Dr. Buffington observed that it was possible that Perry had consumed Xanax earlier in the evening and heroin later.

The court then heard the parties' arguments about whether Patterson had in fact possessed Xanax and heroin with intent to distribute. The Government acknowledged that the only direct evidence linking Patterson to the drugs was Perry's testimony but argued

---

[4] According to Dr. Buffington, Perry presumably meant "Xanax and oral heroin." J.A. 196.

that Perry was credible because he did not have a cellmate or any previous charges of drug possession on jail premises yet overdosed the night Patterson was assigned to his cell. Further, the Government contended, Patterson had the motive and time to sneak drugs into the Jail because they would make his confinement "a little easier," J.A. 219, as well as the opportunity to dispose of them in the common area toilet while jail staff were attending to Perry.

Patterson argued that Perry was not credible for a number of reasons. According to Patterson, it was unlikely he could have removed the glove from his body cavity after being treated for constipation. Perry also had the opportunity to obtain the drugs from another inmate prior to 11:00pm lockdown—and, for that matter, closer to 8:00pm, the time he told hospital staff he had ingested them. And in this vein, Perry's contention that he did not recall telling hospital staff that he had ingested drugs at 8:00pm conflicted with his medical records to the contrary. Further, by Perry's own admission, he hoped to avoid a possession charge by naming Patterson as the source of the drugs. And finally, according to Patterson, the physical evidence discredited Perry's testimony: jail personnel did not find the blue glove or drugs Perry described, and any theory proposing Patterson attempted to dispose of the drugs in the bathroom amounted to "speculation." J.A. 224.

The district court observed that the case presented a close call but concluded that the Government had met its burden of proving by a preponderance of the evidence that Patterson had committed Violations Five and Seven.[5] Based on these findings, as well as

---

[5] Specifically, the district court observed:

Patterson's admissions to Violations One and Two, the court concluded Patterson had violated the terms of his supervised release and revoked it.

In imposing a revocation sentence, the district court observed Patterson had a criminal history category of VI and classified Patterson's original offense as a Class A felony. Given that Violations Five and Seven were Grade A violations, the revocation petition calculated an initial Sentencing Guidelines range of fifty-one to sixty months' imprisonment. But the court made an adjustment to account for Patterson's service of

---

I will say that, first of all, [V]iolations [F]ive and [S]even in my mind sink and swim together because they really rely on the same underlying evidence. I know that the Fourth Circuit has cautioned the district courts about—that there shouldn't be specific findings with regard to whether or not a violation has been committed or not committed. The whole question here is simply the question of whether the government has shown these two violations by the overall preponderance of the evidence.

And as close a case as this is I believe that the government has shown that it's more likely than not that these violations did occur and, therefore, the preponderance has been met. If this were by the beyond a reasonable doubt it's clear that this wouldn't be a conviction. But it's a preponderance standard here as being brought by a probation officer on a violation report, a very different standard—the evidentiary standard is entirely different here today. And based on that much lower standard I believe the government has tipped the scales, albeit slightly, in favor of showing that the defendant did in fact violate as alleged. Therefore the Court will make that finding that the violation, as set out in [V]iolations [F]ive and [S]even, did occur and have been proven by the preponderance.

J.A. 254–55.

7

twenty-one months in prison for a prior revocation, which resulted in a range cap of thirty-nine months.[6]

Patterson asked the court to depart or vary downward from a Guidelines sentence. In support, counsel argued that Patterson had a strong employment history, observing that he had been employed "doing janitorial work and, upon release, [could] do the same type of work." J.A. 256. Further, according to counsel, "he ha[d] strong family support" and "want[ed] to get out of custody as soon as possible [in order to] spend time with [his] grandchildren." J.A. 256–57. Finally, counsel contended, Patterson had acknowledged his substance abuse issues but was adamant about addressing them. And to this point, counsel explained, probation officers who had visited Patterson's residence over the course of his supervision had not uncovered any contraband. In turn, the Government argued that thirty-nine months was appropriate in light of Patterson's history of recidivism, his prior violation for drug possession on jail premises, and his decision not to assist Perry after the overdose.

The district court imposed a thirty-nine month sentence, reasoning that Patterson repeatedly violated the terms of his supervised release by evading twenty-four drug screenings and that the sentence was necessary to provide general deterrence "to those under supervision" by providing a warning "that there are serious consequences for . . .

---

[6] Since the original offense was a Class A felony, Patterson could not be required to serve more than a cumulative total of five years in prison on all revocations combined. *See* 18 U.S.C. § 3583(e)(3) (providing that "a defendant whose term is revoked . . . may not be required to serve on any such revocation more than [five] years in prison if the offense that resulted in the term of supervised release is a [C]lass A felony"). In turn, "since [he] previously served [twenty-one] months in prison on a prior revocation, [he could not] be required to serve more than [thirty-nine] months in prison on this revocation." J.A. 512 (sealed).

8

repeated violation[s] of this nature." J.A. 266. Further, the court observed that even if the Government had failed to prove Patterson had committed Violations Five and Seven, it would have varied upward based on Violations One and Two. Nonetheless, the court observed, "[T]hat is not to say that this sentence [was] not somewhat longer because of [the court's] finding regarding" Violations Five and Seven. J.A. 266. Altogether, the court noted, although it thought thirty-nine months was low given the nature of the violations, such a sentence was still sufficient to fulfill the 18 U.S.C. § 3553(a) factors.

Patterson timely appealed, challenging (1) the district court's lack of explicit factual findings as to Violations Five and Seven; (2) the court's conclusion that he had committed those Violations; and (3) the imposition of the revocation sentence. We have jurisdiction under 28 U.S.C. § 1291.

## II.

### A.

Patterson first contends that, in finding he had committed Violations Five and Seven, the district court declined to specify the evidence supporting its finding that he had committed these Violations. As a result, he asserts, the district court violated his due process rights. We disagree.

The Supreme Court has made clear that individuals subject to the revocation of their parole are entitled to certain due process rights, including "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972); *see also Black v. Romano*, 471 U.S. 606, 612 (1985).

9

This Court has extended a modified version of these protections to supervised release revocation hearings, explaining that due process will be satisfied when in lieu of a written statement "the transcript and record compiled before the trial judge enable the reviewing court to determine the basis of the trial court's decision." *United States v. Copley*, 978 F.2d 829, 831 (4th Cir. 1992).

There, we rejected the defendant's argument that the district court had erred by failing to support its finding of a supervised release violation with a written statement of the evidence and the reasoning it relied upon. Instead, we concluded that "a transcribed oral finding can serve as a written statement for due process purposes when the transcript and record compiled before the trial judge enable" us to "determine the basis" of the court's findings. *Id.*[7] And although the district court's explanation in *Copley* was less than fulsome, it nevertheless comported with due process because "no great leap of faith was required to understand its reasons for ordering revocation." *Id.* at 832. In sum, "[t]he district court's transcribed oral statements . . . when examined together with the transcript of [the defendant's] hearing and the record that was before the court, adequately demonstrate[d] for us the evidence on which the trial court relied." *Id.*; *see also United States v. Samuels*, 745 F. App'x 479, 480 (4th Cir. 2018) (citing *Copley* to conclude that "the district court's recitation of its determination that [the defendant] committed three of the four violations with which he was charged, when viewed in conjunction with the record as a whole, comports with due process").

---

[7] We have omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

Here, the district court's explanation did not specifically set out in a particular format the evidence upon which it relied. As an initial matter, we observe that the district court's statement "that the Fourth Circuit has cautioned the district courts . . . that there shouldn't be specific findings with regard to whether or not a violation has been committed or not committed" is curious. J.A. 254. If it was not the result of an inadvertent misstatement or a transcription error, it was an incorrect statement of law when read in isolation. As discussed, due process requires that a district court—whether in "a transcribed oral finding" or a "written statement"—"adequately demonstrate for us the evidence on which [it] relied" in finding a supervised release violation so that we may understand "its reasons for revoking supervised release." *Copley*, 978 F.3d at 831–32; *see also United States v. Lewis*, 205 F.3d 1335, 2000 WL 139246, at *2 (4th Cir. 2000) (unpublished table opinion) (citing *Copley* to conclude that the district court's "recitation of the evidence on which it relied to find a violation" was sufficient for due process purposes); *cf. Black*, 471 U.S. at 616 (concluding that "[t]he memorandum prepared by the sentencing court and the transcript of the hearing provided the necessary written statement explaining the evidence relied upon and the reason for the decision to revoke probation").

Nonetheless, as in *Copley*, the record plainly shows the trial court's rationale. The transcripts of the hearing and the record clearly demonstrate the evidence upon which the court relied and that the court was actively engaged with the witnesses and counsel. Specifically, the court heard Perry's testimony that Patterson had given him both Xanax and heroin before he overdosed, which was sufficient to support the court's finding that Patterson had committed Violations Five and Seven.

11

The court also heard testimony concerning and watched a video recording of the common area just after Perry's overdose. This recording showed Patterson walk into the bathroom and remain for a period long enough to dispose of any physical evidence of drugs. In turn, the court found that the video was a "significant part of the evidence that the [G]overnment was trying to present" and questioned Patterson's counsel as to why it "should . . . discount that part of the [G]overnment's evidence" demonstrating that Patterson "had an opportunity" to discard the drugs. J.A. 223. And the court heard two corrections officers testify that in the minutes after Perry was discovered, nobody was paying attention to Patterson, corroborating that he had the opportunity to slip into the common area bathroom to dispose of the drugs.

Finally, the court questioned both parties about the "relevance" of "the fact that the last time [he] was before this court on a revocation proceeding it was for the possession of drugs while being in jail," making clear this was germane to its findings. J.A. 250; *see also* J.A. 241. *Cf. Gall v. United States*, 552 U.S. 38, 54 (2007) (observing that a court's "specific attention to [an] issue" may be illustrated by further inquiry on the court's part).[8]

In sum, although the district court could have provided more detailed findings of fact, the transcript of the revocation hearing and the record plainly reflect the evidence it found persuasive: Perry's testimony regarding the drugs, the opportunity for Patterson to

_____

[8] In this vein, the court questioned the Government about what evidence "[o]ther than Mr. Perry's statement . . . tie[d the drugs] to" Patterson, as well as any evidence that "point[ed] to Mr. Patterson more than the other" recently-processed inmates. J.A. 239–40. Such questioning illustrated the district court's full consideration of evidence that might have tipped the scale against a finding that Patterson committed the challenged violations.

12

have disposed of the drugs, and Patterson's prior history of drug possession on jail premises. Because it requires "no great leap" to understand the evidence supporting the court's findings as to Violations Five and Seven, and the record "adequately demonstrate[s] for us the evidence on which the trial court relied," we conclude the district court did not violate Patterson's due process rights. *Copley*, 978 F.2d at 832.

B.

Patterson next contends that the district court abused its discretion when it revoked his supervised release because the finding that he had possessed heroin and Xanax with intent to distribute was clearly erroneous. We disagree.

A district court may revoke supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *Copley*, 978 F.2d at 831. This burden "simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *United States v. Manigan*, 592 F.3d 621, 631 (4th Cir. 2010). On appeal, we review the district court's revocation of supervised release for abuse of discretion, evaluating the court's legal conclusions de novo and its factual determinations for clear error. *United States v. Padgett*, 788 F.3d 370, 373 (4th Cir. 2015). "Under clear-error review, our task is to determine whether the district court's account of the evidence is plausible in light of the record viewed in its entirety." *United States v. Wooden*, 887 F.3d 591, 608–09 (4th Cir. 2018). "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573 (1985).

13

We agree with the Government that based on Perry's testimony alone, there was sufficient evidence for the district court to find that Patterson possessed Xanax and heroin with intent to distribute. Our analysis therefore hinges on the extent to which Perry's testimony could be deemed credible. A district court's credibility determinations at a revocation hearing are entitled to a great deal of deference by the reviewing court. As the Supreme Court noted in *Anderson*, "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never" amount to clear error. 470 U.S. at 575; *see also United States v. Layton*, 564 F.3d 330, 334 (4th Cir. 2009) ("The district court's credibility determinations receive great deference."). After all, overturning a credibility determination is "usually reserved for extreme situations wherein, for example, it would have been physically impossible for the witness to observe what he described[.]" *United States v. Conley*, 875 F.3d 391, 400 (7th Cir. 2017). But a "finder of fact is entitled to believe the testimony of even the most dishonest of witnesses." *Id.*

Accordingly, we find no clear error in the district court's decision to credit Perry's testimony. Although Patterson argues on appeal that Perry's testimony was unreliable because of Perry's drug addiction, his failure to implicate Patterson until his interviews with jail officials, and his self-professed desire to avoid "get[ting] charged with the possession of the substance in a jail facility," J.A. 235, none of these issues makes Perry's testimony incoherent or implausible. That is, it is entirely possible that Perry was addicted to drugs and had a motive to implicate Patterson *and also* received Xanax and heroin from

14

Patterson. The same goes for Patterson's protestations that he would have been unable to produce the glove from his body cavity after being treated for constipation; that attempting to sell drugs when his intermittent confinement period was extremely limited would have made no sense; that there was a lack of physical evidence tying him to the drugs; and that other inmates in the cellblock could have given Perry the drugs. None of these *potential* inconsistencies make the situation described by Perry "physically impossible." *Conley*, 875 F.3d at 400. For example, it is entirely possible that the lack of physical evidence is consistent with the evidence demonstrating that Patterson was in the common area bathroom while corrections officers were tending to Perry, giving him the opportunity to dispose of the drugs. And the possibility that Perry obtained the drugs from another inmate does not rule out the equally plausible possibility that Patterson was the source. In sum, Perry's testimony did not describe a situation "so internally inconsistent or implausible on its face" that it would require us to reverse the district court's credibility determination. *Anderson*, 470 U.S. at 575.

In light of the deference we afford to the district court's credibility determinations and findings, the plausibility of the district court's conclusions as to Violations Five and Seven means we may not overturn its findings. *See Wooden*, 887 F.3d at 602. Therefore, we affirm the district court's conclusion that the Government proved Violations Five and Seven by a preponderance of the evidence.

C.

15

Finally, Patterson argues that the revocation sentence was procedurally unreasonable[9] because the court failed to consider Patterson's nonfrivolous arguments in support of a downward variance or departure. After reviewing the parties' arguments and the record, we hold that the court procedurally erred by failing to acknowledge that it had considered those arguments.

A district court has broad discretion when imposing a sentence upon revocation of supervised release. This Court will affirm a revocation sentence if it is within the statutory maximum and is not plainly unreasonable. *United States v. Gibbs*, 897 F.3d 199, 203–04 (4th Cir. 2018) (explaining that because revocation sentences are entitled to a "more deferential appellate posture" than original sentences, "even an unreasonable revocation sentence may stand unless it is *plainly* unreasonable").

To consider whether a revocation sentence is plainly unreasonable, this Court must first determine whether the sentence is procedurally or substantively unreasonable. *United States v. Crudup*, 461 F.3d 433, 439 (4th Cir. 2006). A revocation sentence is procedurally reasonable if the district court adequately explains the chosen sentence after considering the Chapter Seven policy statement range and the applicable § 3553(a) sentencing factors. *Id.* at 440. The court must also include in its explanation the "assurance" that the court "considered any potentially meritorious arguments raised by the parties with regard to

<hr />

[9] As an initial matter, Patterson argues that the revocation sentence was procedurally unreasonable because it was based on clearly erroneous facts, resulting in an improper Guidelines calculation. Based on our analysis above, we reject this contention, concluding that the district court's findings as to Violations Five and Seven were not clearly erroneous and the Guidelines range was properly calculated.

sentencing," *Gibbs*, 897 F.3d at 204; *see Gall*, 552 U.S. at 51 (observing a district court commits procedural error by "failing to adequately explain the chosen sentence"); *United States v. Moulden*, 478 F.3d 652, 657 (4th Cir. 2007) (same); *see also* 18 U.S.C. § 3583 (specifying the § 3553(a) factors relevant to supervised release revocation).

Only if a sentence is either procedurally or substantively unreasonable is a determination then made as to whether the sentence is plainly unreasonable—that is, whether the unreasonableness is "clear" or "obvious." *Crudup*, 461 F.3d at 439. If the revocation sentence is not plainly unreasonable, we will affirm it. *Id.* at 440.

1.

Before turning to the merits of Patterson's argument, we further review the requirements for a procedurally reasonable revocation sentence. It is well established that in imposing an original sentence, a sentencing judge "should articulate enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). Where a judge elects to impose a within-Guidelines sentence, he or she must provide "a statement of reasons" explaining at a minimum he or she "rests [the] decision upon the [Sentencing] Commission's own reasoning that the Guidelines sentence is a proper sentence" for the typical case. *Id.* at 357. But "[w]here the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence [outside the Guidelines], the judge will normally go further and explain why he has rejected those arguments," either briefly or in more detail depending on the circumstances. *Id.*; *see also United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009) (requiring an explanation for a

17

rejection of a nonfrivolous argument in favor of a non-Guidelines sentence); *United States v. Montes-Pineda*, 445 F.3d 375, 380 (4th Cir. 2006) (requiring "consider[ation]" of the (1) § 3553 factors and (2) "potentially meritorious arguments raised by both parties").

This Court has applied these principles to revocation sentences, with the understanding that such sentences are entitled to a more "deferential appellate posture" in order to "account for the unique nature of . . . revocation sentences." *Gibbs*, 897 F.3d at 203.[10] In *United States v. Slappy*, the defendant argued for a lower revocation sentence within the Guidelines range, advancing "detailed, nonfrivolous" evidence related to "her positive employment history, her efforts at rehabilitation, and her voluntary service to her community." 872 F.3d 202, 205 (4th Cir. 2017). But instead of sentencing her within the Guidelines range, the district court varied upward and imposed the maximum sentence permitted by statute "without addressing [the defendant's] arguments." *Id.* at 206; *see also id.* at 208 (noting that the district court "did not so much as mention her arguments"). This Court vacated, concluding that "where a court entirely fails to mention a party's nonfrivolous arguments in favor of a particular sentence, or where the court fails to provide at least some reason why those arguments are unpersuasive, even the relaxed [procedural] requirements for revocation sentences are not satisfied." *Id.*; *see also United States v. Ross*, 912 F.3d 740 (4th Cir. 2019) (same).

---

[10] As *Gibbs* explained, when a defendant appears for a violation hearing, "he is already subject to the sentence of his criminal judgment, about which he presumably received an appropriate explanation, including an explanation of the range of sentence that could be imposed and why he was receiving a particular sentence." 897 F.3d at 203. Thus, a revocation sentence must account for the "breach of trust in failing to abide by the conditions of his original sentence." *Id.*

More recently, *Chavez-Meza v. United States* made clear that the district court's imposition of a modified sentence need not always be accompanied by a fulsome explanation for its acceptance or rejection of the parties' arguments in favor of a particular sentence because, in many circumstances, a court's *acknowledgment* of its consideration of the arguments will suffice. There, the district court rejected the petitioner's 18 U.S.C. § 3582(c)(2) request that it lower his sentence to 108 months, the bottom of the new Guidelines range applicable to his offense. In support, the petitioner had "stress[ed] various educational courses he had taken in prison." 138 S. Ct. 1959, 1967 (2018). Instead, the court lowered the sentence to 114 months, certifying on an administrative form that it had "considered" the § 3582(c) motion and "taken into account" the § 3553(a) factors and relevant Guidelines policy statement. *Id.* The petitioner appealed, arguing the judge failed to adequately explain its rejection of a 108-month sentence. The court of appeals affirmed, concluding that judge's explanation was adequate.

The Supreme Court agreed, observing that—assuming *Rita* and *Gall* applied to sentence modifications—the record set forth enough to satisfy the appellate court that the district judge had considered the parties' arguments and had a reasoned basis for the sentencing decision. Specifically, the Supreme Court considered that: (1) the judge had before him the original sentencing record (including his rejection, based on the nature of the offense, of the petitioner's original request for downward variance); (2) the Government's evidence that the petitioner had broken a moderately serious rule while in prison; and (3) the court's certification that it had "considered" the petitioner's motion and "taken into account" the relevant Guidelines policy statements and § 3553(a) factors. *Id.* at

19

1967. "[G]iven the simplicity of *this* case, the judge's awareness of the arguments, his consideration of the relevant sentencing factors, and the intuitive reason why he picked a sentence above the very bottom of the new range," the Supreme Court concluded the minimal explanation was lawful. *Id.* at 1967–68. Of course, *Chavez-Meza* acknowledged, "[t]his is not to say that a disproportionate sentence reduction *never* may require a more detailed explanation," and in certain circumstances the use of a "barebones form order in response to a [sentence reduction] motion" may be "inadequate." *Id.* But in those cases "the court of appeals are well suited to request a more detailed explanation when necessary." *Id.*[11]

Similarly, in *Gibbs*, 897 F.3d 199, this Court concluded that making clear that the district court had at a minimum *acknowledged* its consideration of nonfrivolous arguments in favor of mitigation was required for a revocation sentence to satisfy procedural reasonableness. There, the defendant had argued that a downward-variance sentence was warranted because of the hardship the Guidelines range sentence would cause to his family (both due to his absence and loss of income). In response, the district court briefly observed that the defendant had a minimal employment record and little in the way of marketable job skills. And after the defendant represented that the recommended sentence would

---

[11] *See United States v. Martin*, 916 F.3d 389, 396–97 (4th Cir. 2019) (concluding the district court violated *Chavez-Meza* where the defendant had "presented a mountain of new mitigating evidence that the sentencing court never evaluated" yet the court's sole explanation was "merely a recitation of [the defendant's] original criminal behavior"); *United States v. May*, 783 F. App'x 309, 310 (4th Cir. 2019) (observing that because the district court "acknowledged" the defendant's arguments in favor of a reduced sentence under a § 3582(c) motion but explained that a longer sentence was necessary based on other § 3553(a) factors, it had "adequately addressed the arguments raised").

20

impose a hardship on his family, it remarked, "All right" and then after pausing concluded, "No change. Twenty-four months." *Id.* at 202.

However minimal this was, we concluded that the court "*considered* any potentially meritorious arguments raised by [the defendant] with regard to his sentencing" and, in the context of a within-Guidelines sentence, no more was required. *Id.* at 206. Further, when the defendant's arguments for leniency were juxtaposed against the court's affirmative statements as to why it was imposing the within-Guidelines sentence—including four serious supervised release violations and the defendant's criminal history—"the court clearly and properly manifested its reasons for" imposing a Guidelines sentence. *Id.*

2.

Here, the district court gave a fulsome explanation of the factors it considered under § 3553(a) in arriving at the revocation sentence. However, the court failed to note that it had considered Patterson's mitigation points. Specifically, the court reasoned that Patterson had evaded his probation officer's attempts to administer drug tests twenty-four times and emphasized the need to deter others on supervised release per § 3553(a)(2)(B) from engaging in similar conduct. The court observed that even without Violations Five and Seven, it "would have varied upward" because of the nature of Violations One and Two, but also noted that this "is not to say that this sentence [was] not somewhat longer" because of Violations Five and Seven. J.A. 266.

Upon review, we conclude the district court procedurally erred by failing to acknowledge that it had considered Patterson's arguments for a downward variance or departure. Of course, given that the court imposed a Guidelines sentence, that sentence

21

required "less explanation." *United States v. Thompson*, 595 F.3d 544, 547 (4th Cir. 2010); *see also United States v. Webb*, 738 F.3d 638, 642 (4th Cir. 2013) (noting that a Guidelines sentence is "presumed reasonable"). This is especially so given that the court did provide multiple affirmative reasons for imposing a thirty-nine-month sentence. *Cf. Gibbs*, 897 F.3d at 205. Thus, there was not much the court was required to put on the record with respect to its consideration of Patterson's arguments in mitigation. Nonetheless, it failed to do so.

As discussed, we cannot "effectively review the reasonableness of [Patterson's] sentence with[out] the assurance that the court *considered* any potentially meritorious arguments raised" by Patterson "with regard to his sentencing." *Id.* at 205. Patterson argued for a sentence below the Guidelines range based on his history and personal characteristics. Specifically, Patterson's counsel argued that he (1) had a strong employment record and could continue performing janitorial work; (2) enjoyed extensive family support; and (3) was attempting to address his substance abuse problem. While Patterson's linkage of these factors to a lower sentence was tenuous, it remained incumbent upon the district court to acknowledge it had heard these arguments and taken them into consideration in arriving at the revocation sentence. *Cf. id.* at 205 ("The court's comments about [the defendant's] arguments, while not extensive, nonetheless do enable us to effectively review the reasonableness of [the] sentence with the 'assurance' that the court '*considered* any potentially meritorious arguments raised by [the defendant].'"). Although that is a low bar, the record must reflect some affirmation that the court considered the arguments in

22

mitigation made by a defendant. And because of the court's failure to so much as mention Patterson's arguments, we conclude that the revocation sentence was plainly unreasonable.

Finally, we conclude that the court's procedural error was not harmless. Here, the Government has failed to argue, much less met its burden of proving, that this error "did not have a substantial and injurious effect or influence on the result." *United States v. Lynn*, 592 F.3d 57, 585 (4th Cir. 2010). Given the court's statements that it considered various sentence lengths in light of the nature of the offense, it is plausible the court may have imposed a lower sentence. Further, nothing in the record explicitly indicates that it would have imposed the same sentence regardless of whether it considered any specific mitigation factors. *Id.* In sum, we conclude the district court's error was not harmless.[12]

III.

For the reasons set out above, we affirm the revocation of Patterson's supervised release but vacate the sentence imposed and remand for resentencing consistent with this opinion.

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED*

---

[12] As a result, the Court need not consider whether the sentence is substantively reasonable because in such cases the district court's procedural error is by itself a basis for resentencing. *See United States v. Carter*, 564 F.3d 325, 330 n.4 (4th Cir. 2009) ("Having found the sentence procedurally unreasonable, however, we cannot review the sentence for substantive unreasonableness.")