**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 21-4398**

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

AMANZA JAMES POLLINO,

Defendant – Appellant.

**No. 21-4399**

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

AMANZA JAMES POLLINO, a/k/a Jiggy,

Defendant – Appellant.

Appeals from the United States District Court for the Western District of Virginia, at Abingdon.  James P. Jones, Senior District Judge.  (1:21-cr-00002-JPJ-PMS-1; 1:07-cr-00046-JPJ-1)

Submitted:  April 26, 2022                    Decided:  August 16, 2022

Before GREGORY, Chief Judge, and DIAZ and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

––––––––––––

**ON BRIEF:** Juval O. Scott, Federal Public Defender, Charlottesville, Virginia, Nancy C. Dickenson-Vicars, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Abingdon, Virginia, for Appellant. Christopher R. Kavanaugh, United States Attorney, Roanoke, Virginia, S. Cagle Juhan, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee.

––––––––––––

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Amanza James Pollino challenges his perjury conviction and the district court's judgment revoking his supervised release. Both the conviction and revocation judgment stem from Pollino's false statements to the district court during an earlier revocation hearing. The district court sentenced him to a 30-month prison sentence for the perjury conviction, to run consecutively with a 12-month sentence for the revocation judgment.

On appeal, Pollino argues that (1) substantial evidence doesn't support his perjury conviction because his false testimony wasn't "material" under 18 U.S.C. § 1623, (2) the court erred by applying a three-level enhancement to his Guidelines range for "substantial interference with the administration of justice" under U.S.S.G. § 2J1.3(b)(2), and (3) his revocation sentence was procedurally unreasonable. Because Pollino's false statements were "material" and any sentencing errors were harmless, we affirm.

I.

In 2008, Pollino was convicted of conspiring to distribute five or more grams of cocaine base and possessing the same with intent to distribute.[1] After serving his 120-month prison sentence, he entered supervised release. In short order, Pollino violated his release conditions several times by possessing and using illegal drugs, including marijuana,

---

[1] We affirmed Pollino's conviction and sentence on direct appeal. *United States v. Pollino*, 329 F. App'x 478 (4th Cir. 2009).

3

cocaine, and Suboxone.  For these violations, the district court ordered him to serve a one-month revocation sentence, despite a Guidelines range of 12–18 months.

Before the self-report date for his revocation sentence, Pollino was charged by state authorities with driving under the influence and possessing a controlled substance.  And then, after serving his one-month revocation sentence, he failed urine screens three months in a row.  These violations led to a second revocation hearing.

Pollino testified under oath at that hearing.  He discussed his substance-abuse treatment but admitted to the court that he'd been using drugs throughout his treatment program.  The government asked when Pollino "last used a controlled substance."  J.A. 108.  He responded, "maybe a month and a half ago."  J.A. 108.

Pollino clarified that he last used marijuana and twice denied using cocaine.  The government first asked if he had "used cocaine too" since his last test.  J.A. 109.  Pollino replied, "[n]o, I haven't since then."  *Id.*  Later, the government asked about his plan to avoid driving under the influence of controlled substances like cocaine.  J.A. 112.  Pollino again explained,

> Like I said, right now *I haven't used cocaine at all*.  I've been in a better place.  I guess you could say, like my family, even my relationship, everything has been . . . on the positive side.  So I've had . . . more positive outlooks and thoughts . . . . I mean, all I know how to do, sir, is to just strive to do better, to just pick myself up and learn from my mistakes and continue to move forward.

J.A. 112 (emphasis added).  He then asked the court to let him continue his treatment rather than incarcerate him.

4

After hearing Pollino's testimony, the court agreed. Even though it found that Pollino had violated his release conditions, the court said that he was "a truthful person." J.A. 119. The court also remarked that Pollino had a child, was in a more permanent relationship with his girlfriend, had a good job, and "seem[ed] like deep down . . . a responsible person." J.A. 120. Thus, it decided that "sending [] Pollino to jail" wasn't "the answer," even with a Guidelines range of 6–12 months' incarceration. *Id.* Instead, the court dismissed the violations and allowed Pollino to continue his supervised release. J.A. 122.

A few hours later, however, Pollino's probation officer drug tested him. The test came back positive for cocaine, marijuana, and Suboxone. Though Pollino first denied using cocaine, he signed an affidavit admitting he'd used the drug about a week before the hearing.

A grand jury then indicted Pollino with perjury for lying about his drug use at the second revocation hearing. He chose a bench trial. The court found Pollino guilty after hearing from his probation officer and reviewing the revocation hearing transcript and Pollino's affidavit admitting his cocaine use.[2] The district court later sentenced Pollino to 30 months' incarceration for the perjury conviction. And in a third revocation hearing on the same day as Pollino's perjury sentencing, the court ordered a consecutive 12-month sentence.

---

[2] Pollino failed a drug screen in the weeks after his second revocation hearing and before his perjury indictment. And he failed another screen after his perjury conviction while he was on presentencing bond.

5

Pollino's presentence report for the perjury case included a three-point enhancement for "substantial interference with the administration of justice" under U.S.S.G. § 2J1.3(b)(2).    That guideline provides that "[s]ubstantial interference with the administration of justice" includes "any judicial determination based upon perjury." U.S.S.G. § 2J1.3(b)(2) cmt. n.1.  Though the district court at first sustained Pollino's objection to the enhancement, the court (after hearing from the probation officer) agreed with the government that the enhancement applied.  With the enhancement, Pollino's Guidelines' range was 46–57 months.

Even so, the court imposed a downward-variant sentence of 30 months' incarceration.  And it commented that it "would have imposed the same sentence had [it] not upheld the [three-point enhancement] because [it] believed this [was] the appropriate sentence" given the other sentencing factors.  J.A. 289.

The court then sentenced Pollino to 12 months' imprisonment for his supervised-release violations, to run consecutively with his perjury sentence.  Though the government requested a 30-month revocation sentence, the court found a sentence at the "low end" of the 12–18-month Guidelines range "appropriate."  J.A. 138.

This appeal followed.

## II.

We begin with Pollino's claim that his false testimony about his drug use wasn't material to the district court's ruling at his second revocation hearing.  If the statements were immaterial, we must vacate his conviction under 18 U.S.C. § 1623(a).

6

On this issue, we "view the evidence in the light most favorable to the prosecution and decide whether substantial evidence . . . supports the verdict." *United States v. Walker*, 32 F.4th 377, 397 (4th Cir. 2022) (cleaned up). "Substantial evidence is such evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Spirito*, 36 F.4th 191, 199 (4th Cir. 2022) (cleaned up).

Because Pollino hasn't met his "heavy burden" here, we affirm his conviction. *United States v. Savage*, 885 F.3d 212, 219 (4th Cir. 2018) (cleaned up).

A.

Section 1623(a) requires the government to prove that a defendant's false declaration was material to the court's inquiry.[3] *See United States v. Wilkinson*, 137 F.3d 214, 224 (4th Cir. 1998). A declaration is "material" if it "has a natural tendency to influence, or is capable of influencing, the decision-making body to which it was addressed." *Id.* at 225 (cleaned up).

The district court addressed the materiality element at trial. The question, said the court, wasn't what it would have done had it known about Pollino's "recent cocaine use," but whether Pollino's false statements about his cocaine use "w[ere] capable of influencing" its decision. J.A. 207–08.

---

[3] The government also had to prove (and the court found) that Pollino made a false declaration under oath in a proceeding before the court. 18 U.S.C. § 1623(a); *see also United States v. Burfoot*, 899 F.3d 326, 339 (4th Cir. 2018).

The government called Pollino's probation officer to testify. The officer confirmed that recent drug use by a defendant could influence the outcome of a revocation proceeding. J.A. 196. Such conduct "shows that the individual is not trying to better his situation." *Id.* Not to mention that it's "also against the law to use illegal drugs." *Id.* And the officer testified that he would have recommended Pollino be incarcerated for the violations because it wasn't "his first supervised release revocation hearing."[4] J.A. 198.

The court credited this testimony, finding that "recent drug use in a supervised release situation . . . [with] various outcomes of revocation . . . certainly is capable of influencing the outcome." J.A. 208. The court added that Pollino's false statements "were made in the context of his . . . attempt[] to show [the court] . . . that he was trying to improve." J.A. 206. And the court noted it had dismissed Pollino's violations after "[i]ronically" finding him to be "a truthful person." J.A. 207.

B.

On appeal, Pollino doesn't contest that he lied under oath. Rather, he argues that his statements didn't affect "the [c]ourt's consideration of the proper punishment for his revocation case." Appellant's Br. at 12. Pollino admitted to using marijuana—a violation of his supervised release. And a violation is a violation, he says, "whether one use[d] the drugs on a Monday or Saturday, or whether the use happened ten or three days prior." *Id.*

---

[4] The probation officer couldn't "recall the exact recommendation [for Pollino], but incarceration would have been included." J.A. 198.

There was no question, contends Pollino, "that he admitted he had violated his supervision by using drugs." *Id.* at 14.

But the context around Pollino's drug use and his false statements matter. The court held the revocation hearing for Pollino's repeated drug-related violations and for his DUI. And these charges came after the district court had once revoked Pollino's supervised release. The probation office calculated Pollino's Guidelines range as 6–12 months' imprisonment, yet the court dismissed the violations.

The court did so after Pollino described his positive outlook, rehabilitative efforts, and improved personal relationships. And, notably, after he twice assured the court that he wasn't using cocaine. The court in turn found him "truthful" and "responsible." J.A. 119–20.

We find, then, that substantial evidence supports Pollino's perjury conviction. District courts have broad discretion in revocation hearings, and the court here needed only to determine that Pollino's recent drug use *could* have affected its decision. That standard is easily met. The government presented evidence to that effect, which the court reasonably credited. And it is at least plausible that, had the court known Pollino was using drugs until just before the hearing (if not merely days before[5]), it wouldn't have simply dismissed his violations.

---

[5] During Pollino's sentencing for perjury, his probation officer stated that (because cocaine doesn't stay in one's system long) Pollino likely used cocaine closer to his hearing than the date he admitted. J.A. 254–55.

9

It's true that, at several points, the court wavered on how Pollino's false statements affected its revocation decision. *Compare* J.A. 249 ("[H]ad I known that, in fact, [Pollino] had . . . tested positive [for cocaine] . . . I believe my decision would have been different."), *with* J.A. 244–45 ("[I]f [Pollino] had told the truth, I don't know that there would have been any difference in my outcome."). The court admitted that it "struggled" to answer this question. J.A. 285. But the government needed only to prove that the false declarations *could* have affected the court's determination, which it did.

We affirm Pollino's perjury conviction.

III.

We turn next to Pollino's challenge to the three-point enhancement to his guidelines sentence for perjury under U.S.S.G. § 2J1.3(b)(2). A court may apply this sentencing enhancement if "perjury, subornation of perjury, or witness bribery resulted in substantial interference with the administration of justice." U.S.S.G. § 2J1.3(b)(2).

Pollino argues that there was no "substantial interference" with the administration of justice because the government indicted him on a perjury charge rather than seeking to revoke his supervised release. Appellant's Br. at 17. Nor, says Pollino, did his false testimony result in "unnecessary expenditure of substantial governmental . . . resources," as § 2J1.3 purportedly requires. *Id.* at 18 (quoting *United States v. Dudley*, 941 F.2d 260, 265 (4th Cir. 1991)).

We, however, don't need to address these arguments because any error by the district court would be harmless. *See United States v. Gomez-Jimenez*, 750 F.3d 370, 382

10

(4th Cir. 2014) ("Rather than review the merits of each of these challenges, we may proceed directly to an assumed error harmlessness inquiry." (cleaned up)).

We consider a Guidelines error harmless when "(1) the district court would have reached the same result even if it had decided the Guidelines issue the other way, and (2) the sentence would be reasonable even if the Guidelines issue had been decided in the defendant's favor." *United States v. Cisson*, 33 F.4th 185, 190 (4th Cir. 2022) (cleaned up). Both conditions are met here.

The first prong is readily satisfied. The district court said during Pollino's perjury sentencing that it would have imposed the same sentence even if it had sustained his objection to the enhancement. Put plainly, "we know a district court would have reached the same result when it tells us it would have done so and explains why." *Cisson*, 33 F.4th at 190.

As for the second prong, the district court sentenced Pollino to 30 months' imprisonment—a downward-variant sentence. Thus, the sentence is presumptively reasonable. *See United States v. Moses*, 23 F.4th 347, 359 (4th Cir. 2022). Indeed, without the three-point enhancement, Pollino's Guidelines range would have been 33–41 months' imprisonment, still higher than the sentence the court imposed.

Pollino tries to rebut the presumption by arguing that the district court's sentence was "unreasonable when measured against the 18 U.S.C. § 3553(a) factors."[6] Reply Br. at

---

[6] Because Pollino didn't argue that his perjury sentence was substantively unreasonable in his opening brief, he waived this argument. *See Suarez-Valenzuela v. Holder*, 714 F.3d 241, 249 (4th Cir. 2013). But we address it all the same.

11

18. He emphasizes that at the time of the revocation hearing, he "was employed, supporting his family, and attending substance abuse counseling as directed by his probation officer." *Id.* at 16. And it was "clear he was a drug addict who needed treatment, not incarceration." *Id.* He grew up in poverty "with parents who also suffered from substance abuse," and he began using drugs "himself at a young age." *Id.*

But the district court considered this mitigating evidence, hearing testimony from Pollino's mother and an allocution from Pollino. The court also weighed the § 3553(a) factors, finding that "[p]erjury strikes at the heart of our judicial system," and "the only way [the] court system can work fairly is if people tell the truth." J.A. 287. It noted that it had treated Pollino "leniently" in the past but that he "failed almost at every turn to respond to that leniency with efforts to solve his drug problem and to remain drug free." *Id.* Nonetheless, the court still gave Pollino a below-Guidelines sentence because he showed remorse, had a family, and was employed. J.A. 288–89.

The court's explanation for Pollino's downward-variant sentence was thorough and well-reasoned. Pollino's arguments to the contrary are unpersuasive, confirming rather than overcoming the presumption that his sentence was substantively reasonable.

## IV.

Finally, Pollino asserts the district court abused its discretion by failing to adequately explain its 12-month revocation sentence. The thrust of his argument is that

12

the court didn't address his requested alternatives to incarceration: a halfway house or residential drug-treatment program.[7] *See* Appellant's Br. at 22. Pollino is wrong.

## A.

As we've said, a district court has broad discretion when imposing a revocation sentence. *See United States v. Patterson*, 957 F.3d 426, 436 (4th Cir. 2020). And revocation sentences are afforded a more "deferential appellate posture" than original sentences. *United States v. Gibbs*, 897 F.3d 199, 203–04 (4th Cir. 2018) (cleaned up). We will "affirm a revocation sentence if it is within the statutory maximum and is not plainly unreasonable." *Patterson*, 957 F.3d at 436.

That said, a district court's revocation sentence must still be procedurally reasonable. *Id.* at 436–37. Procedural reasonableness in this context requires a court to explain the propriety of a within-Guidelines sentence and that it considered a defendant's "nonfrivolous reasons for imposing a different sentence." *Id.* at 437–39. Here, the district court did more.

## B.

The district court held Pollino's revocation hearing within minutes of sentencing Pollino for perjury. When imposing the perjury sentence, the court heard from Pollino, his

---

[7] Pollino also argues that it would have been $5,000 cheaper for the court to order drug treatment than to send him to prison. Appellant's Br. at 25. But he never advanced this argument in the district court, so there was no error in the court's failure to address it. *See United States v. Williams*, 823 F. App'x 128, 135 (4th Cir. 2020) ("Although a defendant can raise a ground for a variance *before or during* the sentencing hearing, we do not require judges to address grounds properly raised only on appeal.").

13

mother, and his probation officer.  It also reflected on its history with Pollino, from his original sentencing to several revocation hearings, noting that Pollino has "spent a long time in prison."  J.A. 286.

The court said it had read Pollino's perjury sentencing memorandum, which briefly alluded to drug treatment.  To this, the court responded that it "considered the options that [Pollino] has suggested to the [c]ourt in lieu of a prison sentence . . . in which he would receive residential drug treatment."  J.A. 286–87.  The court found incarceration "important" but recommended a residential drug-treatment program for Pollino while he was in custody.  J.A. 289.

Fast-forward to the revocation sentencing hearing, where Pollino "incorporate[d] the arguments made in" his perjury sentencing.  J.A. 135.  He again requested to stay in a halfway house or participate in a residential drug-treatment program.  The government, meanwhile, sought an above-Guidelines sentence of 30 months' imprisonment, given Pollino's "multiple serious violations and breaches of this court's trust."  J.A. 134.

The court found that Pollino violated his release conditions but rejected the government's request for an upward variance.  It remarked that Pollino "reiterate[d] arguments previously made [in the perjury sentencing]," before concluding that his "continued drug use [was] sufficient cause, in [its] view, for a sentence of incarceration." J.A. 138.  The court "carefully considered" Pollino's arguments otherwise but decided "a sentence at the low end of the [Guidelines] [was] appropriate."  J.A. 138.

The court's revocation sentence wasn't plainly unreasonable.  First, it was within-Guidelines, so the court's explanation didn't need to "be elaborate or lengthy."  *United*

14

*States v. Arbaugh*, 951 F.3d 167, 174–75 (4th Cir. 2020) (cleaned up).  And the court affirmed that the sentence accounted for "the factors that [it was] required to consider," including Pollino's "history and characteristics."  J.A. 138.

As for Pollino's requested alternatives to incarceration, the court heard his arguments.  But it found a prison sentence warranted, given his "continued drug use."  J.A. 138.  Tellingly, the court had dismissed earlier probation violations and let Pollino continue drug treatment.  Pollino then rewarded the court's leniency with dishonesty and more failed drug screens.

With the court's explanation of Pollino's perjury and revocation sentences in consecutive hearings, we have an adequate record to review.  *See Chavez-Mesa v. United States*, 138 S. Ct. 1959, 1967–68 (2018).  Given its experience with Pollino and individualized assessment of his case, we won't disturb the district court's chosen sentence.

*AFFIRMED*

15